G. Van Velsor Wolf Jr. (#07530)
Michael K. Foy (#032736)
**SALMON, LEWIS, & WELDON, P.L.C.**
2850 East Camelback Road, Suite 200
Phoenix, Arizona 85016
Telephone: 602-801-9075
Facsimile: 602-801-9070
Email: vvw@slwplc.com

*Attorneys for Defendant Air Liquide
America Specialty Gases, L.L.C.*

Christopher D. Thomas (#010482)
Matthew L. Rojas (#025030)
**SQUIRE PATTON BOGGS (US) LLP**
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: 602-548-4000
Facsimile: 602-253-8129
Email: Chris.thomas@squirepb.com
Email: Matthew.rojas@squirepb.com

*Attorneys for Defendant City of Phoenix*

Stephen L. Wetherell (#015353)
Phoenix City Attorney's Office
Civil Division
200 West Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
Telephone: 602-262-6761
Facsimile: 602-534-2476
Email: Stephen.wetherell@phoenix.gov
*Attorneys for Defendant City of Phoenix*

Thomas Loquvam
**PINNACLE WEST CAPITAL
CORPORATION**
Post Office Box 53999 MS8695
Phoenix, Arizona 85072-3999
Telephone: 602-250-3616
Facsimile: 602-250-3393
Email: Thomas.Loquvam@pinnaclewest.com

*Attorneys for Defendant Arizona Public
Service Co.*

Mitchell J. Klein (#007430)
J. Matthew Derstine (#011448)
Timothy J. Sabo (#021309)
**SNELL & WILMER LLP**
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602-382-6000
Facsimile: 602-382-6070
Email: mjklein@swlaw.com
Email: mderstine@swlaw.com
Email: tsabo@swlaw.com

*Attorneys for Defendant Arizona Public
Service Company*

(Additional counsel listed on next pages)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Roosevelt Irrigation District, a political subdivision of the State of Arizona,<br><br>      Plaintiff,<br><br>  v.<br><br>Salt River Project Agricultural Improvement and Power District, et al.,<br><br>      Defendants. | No. 2:10-CV-00290-PHX-DAE (BGM)<br><br>**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: PLAINTIFF'S REMAINING CLAIMED COSTS —AND—**<br><br>**MEMORANDUM IN SUPPORT**<br><br>**(Oral Argument Requested)**<br><br>**REDACTED PUBLIC VERSION** |

| | |
|---|---|
| Shane R. Swindle (#011738)<br>Michael P. Berman (#005861)<br>P. Derek Petersen (#025683)<br>**PERKINS COIE LLP**<br>2901 North Central Avenue, Suite 2000<br>Phoenix, Arizona 85012-2788<br>Telephone: 602-351-8000<br>Facsimile: 602-648-7000<br>Email: SSwindle@perkinscoie.com<br>Email: MBerman@perkinscoie.com<br>Email: PDPetersen@perkinscoie.com<br><br>*Attorneys for Defendant Corning*<br>*Incorporated* | Troy B. Froderman (#012717)<br>Jonathan G. Brinson (#025045)<br>**POLSINELLI PC**<br>One East Washington Street, Suite 1200<br>Phoenix, Arizona 85004<br>Telephone: 602-650-2000<br>Facsimile: 602-264-7033<br>Email: tfroderman@polsinelli.com<br>Email: jbrinson@polsinelli.com<br><br>*Attorneys for Defendant Dolphin*<br>*Incorporated* |
| Mitchell J. Klein (#007430)<br>**SNELL & WILMER L.L.P.**<br>400 East Van Buren Street, Suite 1900<br>Phoenix, Arizona 85004<br>Telephone: 602-382-6000<br>Facsimile: 602-382-6070<br>Email: mjklein@swlaw.com<br><br>*Attorneys for Defendant Dolphin*<br>*Incorporated* | John M. Barkett (FL #197548)<br>**SHOOK, HARDY & BACON LLP**<br>201 South Biscayne Boulevard, Suite 3200<br>Miami, Florida 33131-4332<br>Telephone: 305-358-5171<br>Facsimile: 305-358-7470<br>Email: jbarkett@shb.com<br><br>*Attorneys for Defendant Freescale*<br>*Semiconductor, Inc.* |
| Karen S. Gaylord (#010621)<br>**JENNINGS, HAUG & CUNNINGHAM**<br>**LLP**<br>2800 North Central Avenue, Suite 1800<br>Phoenix, Arizona 85004-1049<br>Telephone: 602-234-7800<br>Facsimile: 602-277-5595<br>Email: ksg@jhc-law.com<br><br>*Attorneys for Defendant Honeywell*<br>*International Inc.* | Sean Morris (*Pro Hac Vice*)<br>Eric D. Mason (*Pro Hac Vice*)<br>Sean A. McCormick (*Pro Hac Vice*)<br>**ARNOLD & PORTER LLP**<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, California 90017-5844<br>Telephone: 213-243-4000<br>Facsimile: 213-243-4199<br>Email: sean.morris@aporter.com<br>Email: eric.mason@aporter.com<br>Email: sean.mccormick@aporter.com<br><br>*Attorneys for Defendant Honeywell*<br>*International Inc.* |

Mitchell J. Klein (#007430)
Maribeth M. Klein (#023943)
**SNELL & WILMER L.L.P.**
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602-382-6000
Facsimile: 602-382-6070
Email: mjklein@swlaw.com
Email: mmklein@swlaw.com

*Attorneys for Defendant ITT Corporation*

John M. Pearce (#012300)
Scott K. Ames (#014943)
**FENNEMORE CRAIG PC**
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016-3429
Telephone: 602-916-5000
Facsimile: 602-916-5510
Email: jpearce@fclaw.com
Email: sames@fclaw.com

*Attorneys for Defendant Kinder Morgan Energy Partners, LP*

J. Kenneth Mangum (#003077)
Ann Thompson Uglietta (#013696)
Deputy County Attorneys
Civil Services Division
Maricopa County Attorney's Office
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: 602-506-8541
Facsimile: 602-506-8567
Email: mangumk@mcao.maricopa.gov
Email: Uglietta@mcao.maricopa.gov

*Attorneys for Defendant Maricopa County*

Jerry D. Worsham II (#015594)
**THE CAVANAGH LAW FIRM, P.A.**
1850 North Central Avenue, Suite 2400
Phoenix, Arizona 85004
Telephone: 602-322-4040
Facsimile:  602-322-4105
Email: jworsham@cavanaghlaw.com

*Attorneys for Defendant Meritor, Inc.*

Christopher L. Callahan (#009635)
Phillip F. Fargotstein (#006679)
Scott K. Ames (#014943)
**FENNEMORE CRAIG PC**
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016-3429
Telephone: 602-916-5000
Facsimile: 602-916-5510
Email: ccallaha@fclaw.com
Email: pfargots@fclaw.com
Email: sames@fclaw.com

*Attorneys for Defendant Nucor Corporation*

Carla A. Consoli (#013798)
Stanley B. Lutz (#021195)
Marla Hudgens (#032295)
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595
Telephone: 602-262-5311
Fax: 602-262-5747
Email:  cconsoli@lrrc.com
Email:  sblutz@lrrc.com
Email:  mhudgens@lrrc.com

*Attorneys for Defendant Prudential Overall Supply*

| | |
|---|---|
| Matthew G. Ball (CA #208881)<br>Jason N. Haycock (CA #278983)<br>**K&L GATES, LLP**<br>Four Embarcadero Center, Suite 1200<br>San Francisco, California 94111<br>Telephone: 415-882-8200<br>Facsimile: 415-882-8220<br>Email: Matthew.ball@klgates.com<br>Email: Jason.haycock@klgates.com<br><br>*Attorneys for Defendant Reynolds Metals Company* | David J. Armstrong (#017111)<br>Craig C. Hoffman (#026017)<br>Lea A. Phillips (#029006)<br>**BALLARD SPAHR LLP**<br>1 East Washington Street, Suite 2300<br>Phoenix, Arizona 85004-2555<br>Telephone: 602.798.5400<br>Facsimile: 602.798.5595<br>Email: armstrongd@ballardspahr.com<br>Email: hoffmanc@ballardspahr.com<br>Email: phillipsla@ballardspahr.com<br><br>*Attorneys for Defendant Salt River Project Agricultural Improvement and Power District* |
| Joshua Levine (CA #171840)<br>**BOOTH LLP**<br>1849 Sawtelle Boulevard, Suite 500<br>Los Angeles, California 90025<br>Telephone: 310-641-1800<br>Facsimile: 310-641-1818<br>Email: JLevine@boothllp.com<br><br>*Attorneys for Defendant Textron, Inc.* | William W. Pearson (#012845)<br>**PEARSON LAW GROUP LLC**<br>1221 East Osborn Road, Suite 101<br>Phoenix, Arizona 85014<br>Telephone: 602-237-5405<br>Facsimile: 602-688-5488<br>Email: Wink@pearsonlg.com<br><br>*Attorneys for Defendant Union Pacific Railroad Company* |
| Michelle Ulick Rosenthal (WSBA #35439)<br>Gregory T. Hixson (WSBA #39223)<br>Denver R. Gant (WSBA #38552)<br>Attorneys *Pro Hac Vice*<br>**VERIS LAW GROUP PLLC**<br>1809 Seventh Avenue, Suite 1400<br>Seattle, Washington 98101<br>Telephone: 206-829-9590<br>Facsimile: 206-829-9245<br>Email: Michelle@verislawgroup.com<br>Email: Greg@verislawgroup.com<br>Email: Denver@verislawgroup.com<br><br>*Attorneys for Defendant Univar USA Inc.* | |

# TABLE OF CONTENTS

**Page**

MOTION ...................................................................................................... 1

MEMORANDUM ......................................................................................... 2

INTRODUCTION ........................................................................................ 2

ARGUMENT ............................................................................................... 2

I.      CERCLA REQUIRES THAT RID'S REMAINING CLAIMED COSTS BE OFFSET BY THE $624,094.75 RID HAS ALREADY RECEIVED FROM THE ADEQ. ........................................................................................... 2

II.     RID HAS NOT "INCURRED" AND THUS CANNOT RECOVER G&K'S $83,810.08 PAYMENT TO ADEQ. ............................................................ 3

III.    RID'S CLAIMED $530,388.07 FOR "TASK 2 COSTS" IS NOT RECOVERABLE. ........................................................................................ 4

IV.     RID'S CLAIMED $485,376.77 FOR "DISTRICT GENERAL RESPONSE COSTS" IS ALSO UNRECOVERABLE. ..................................................... 7

     A.      The District General Response Costs Include Double-Counted Amounts. ........................................................................................ 7

     B.      RID Has Failed To Present Supporting Documentation For Certain Claimed Labor Costs. ................................................................... 8

     C.      The Claimed District General Response Costs Include Unrecoverable Amounts Related To Litigation And Marketing Of Drinking Water. ........... 8

     D.      RID's Failure To Segregate Out And Prove Any Particular Amount As "Necessary Costs Of Response," Prevents The Court From Determining Whether Any Of The District General Response Costs Are Recoverable. ............................................................................. 10

CONCLUSION ........................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Carson Harbor Village, Ltd. v. Unocal Corp.*,
   287 F. Supp. 2d 1118 (C.D. Cal. 2003)......................................................................4

*City of Moses Lake v. United States*,
   458 F. Supp. 2d 1198 (E.D. Wash. 2006) ................................................................4

*Ekotek Site PRP Comm., Inc. v. Self*,
   1 F. Supp. 2d 1282 (D. Utah 1998)...............................................................10, 13

*G.J. Leasing Co. v. Union Elec. Co.*,
   54 F.3d 379 (7th Cir. 1995)..........................................................................................5

*In re Bell Petroleum Servs., Inc.*,
   3 F.3d 889 (5th Cir. 1993)............................................................................................5

*Key Tronic v. United States*,
   511 U.S. 809 (1994)...................................................................................4, 8, 12

*Pneumo Abex Corp. v. Bessemer & Lake Erie RR Co.*,
   936 F. Supp. 1250 (E.D. Va. 1996)......................................................................8, 10

*Santa Clara Valley Water Dist. v. Olin Corp.*,
   655 F. Supp. 2d 1048 (N.D. Cal. 2009) ................................................................4

*Sealy Connecticut, Inc. v. Litton Indus., Inc.*,
   93 F. Supp. 2d 177 (D. Conn. 2000)..............................................................4, 7, 10

*United Alloys, Inc. v. Baker*,
   797 F. Supp. 2d 974 (C.D. Cal. 2011)................................................................13

*V.I. Dept. Planning & Nat. Res. v. St. Croix Renaissance Grp.*,
   527 F. App'x 212 (3d Cir. 2013).............................................................................8

*Wichita v. APCO Oil Corp.*,
   306 F. Supp. 2d 1040 (D. Kan. 2003) ...............................................................8, 10

*Young v. United States*,
   394 F.3d 858 (10th Cir. 2005).................................................................................4

**STATUTES**

42 U.S.C. § 9607(a)(4)(B)............................................................................................4

42 U.S.C. § 9614(b) ....................................................................................................2

A.R.S. § 49-282.E.11 ..................................................................................................2

CERCLA § 107(a) .......................................................................................................3

CERCLA § 114(b) ...............................................................................................1, 2, 3

**MOTION**

Pursuant to Fed. R. Civ. P. 56 and LR Civ. 56.1, Defendants[1] move for summary judgment on those remaining portions of Plaintiff RID's claimed response costs, totaling approximately $1.17 million (the "Remaining Claimed Costs"), that are not within the six categories of claimed costs addressed by Defendants' previously filed summary judgment motion (the "First MSJ re Costs").[2]   The grounds for this Motion (the "Second MSJ re Costs") are:

(i) Based on CERCLA § 114(b), RID's Remaining Claimed Costs must be offset by the $624,094.75 in "reimbursement" payments that the Arizona Department of Environmental Quality (the "ADEQ") made to RID during 2013-15;

(ii) RID has not "incurred" the $83,810.08 "ADEQ Oversight Cost" component of its Remaining Claimed Costs;

(iii) RID's claimed $530,388.07 in "Task 2 Costs" are unrecoverable because they do not constitute "necessary costs of response"; and

(iv) RID's claimed $485,376.77 in "District General Response Costs" are unrecoverable because:

(a) they include amounts RID has double-counted;

(b) they include an amount for which RID has no supporting documentation;

---

[1] As used in this Motion, and unless the context requires otherwise, "Defendants" refers to the following parties on whose behalf this MSJ is filed:  Air Liquide America Specialty Gases, L.L.C.; Arizona Public Service Company; City of Phoenix; Corning Incorporated;  Dolphin Incorporated;  Freescale Semiconductor, Inc.;  Honeywell International, Inc.; ITT Corporation; Kinder Morgan Energy Partners, LP; Maricopa County; Meritor, Inc.; Nucor Corporation; Prudential Overall Supply; Reynolds Metals Company; Salt River Project Agricultural Improvement and Power District; Textron, Inc.; Union Pacific Railroad Company; and Univar USA Inc.

[2] Defendants' Motion for Partial Summary Judgment re: Plaintiff's Claimed Past Costs.  [Dkt. 1110]

1          (c) they include costs for activities that, as RID has admitted,

2   are not recoverable under CERCLA; and

3          (d) in any event, RID has failed to carry its burden of proving that

4   any particular portion of these claimed costs are "closely tied to the actual

5   cleanup."[3]

6        This Motion is supported by the below Memorandum, the accompanying Statement

7   of Facts ("SOF"), and materials contained in the docketed record with this Court.

8   **MEMORANDUM**

9   **INTRODUCTION**

10        Defendants' First MSJ re Costs demonstrates that six discrete categories of RID's

11   claimed costs are not recoverable under CERCLA, because RID has not "incurred" any of

12   those costs—*i.e.*, it neither has paid, nor has any current, non-contingent obligation to pay,

13   those costs.  [SOF ¶ 1]  Those six categories now collectively represent approximately

14   $16.59 million of RID's current total cost claim of $17.76 million.  [SOF ¶¶ 1-13]  This

15   Second MSJ re Costs demonstrates that Defendants are also entitled to summary judgment

16   with respect to RID's Remaining Claimed Costs, which now total $1,170,035.47.  [*Id.*]

17   **ARGUMENT**

18   **I.**   **CERCLA REQUIRES THAT RID'S REMAINING CLAIMED COSTS BE

19   OFFSET BY THE $624,094.75 RID HAS ALREADY RECEIVED FROM THE ADEQ.**

20        CERCLA § 114(b) provides that "[a]ny person who receives compensation for

21   removal costs or damages or claims pursuant to any other Federal or State law shall be

22   precluded from receiving compensation for the same removal costs or damages or claims

23   as provided in this chapter."  42 U.S.C. § 9614(b).  It is undisputed that during 2013-15, in

24   response to RID's applications seeking "reimbursement" under A.R.S. § 49-282.E.11, the

25

26         [3] This Second MSJ re Costs is limited to the grounds set forth herein, and does not

27   address every ground on which RID's Remaining Claimed Costs are subject to challenge. Accordingly, Defendants reserve their right to challenge those costs on additional grounds

28   should it ever become necessary.

ADEQ paid RID a total of $624,094.75.[4]   [SOF ¶¶ 14-19]   Thus, CERCLA § 114(b) requires that RID's cost claim be reduced by this $624,094.75 amount.  Indeed, RID has conceded this point in a previous filing, having stated that "[a]ny monies RID has received from ADEQ would simply constitute a setoff against the recoverable amount." [RID's Motion for Protective Order (Dkt. 1171) at 9]  Upon subtracting this $624,094.75 amount from RID's $1,170,035.47 in Remaining Claimed Costs, the net amount of RID's Remaining Claimed Costs is reduced to $545,940.72.

## II.   RID HAS NOT "INCURRED" AND THUS CANNOT RECOVER G&K'S $83,810.08 PAYMENT TO ADEQ.

RID's Remaining Claimed Costs include $83,810.08 for "ADEQ Oversight Costs." [SOF ¶ 20]  It is undisputed, however, that Gallagher & Kennedy ("G&K")—not RID— paid that $83,810.08 to ADEQ, and that RID has not reimbursed G&K for any of that amount.   [SOF ¶¶ 21-22]   Further, RID has no existing, non-contingent obligation to reimburse G&K for any amounts that G&K has paid or may pay in connection with this matter.   [SOF ¶¶ 23-24; *see also* Dkt. 1110 (First MSJ re Costs) at 7]   Rather, any obligation RID may have to reimburse G&K for that $83,810.08 or any other amounts paid by G&K is "on a pure 'contingency' basis"—conditioned entirely upon various uncertain future events, including the outcome of this litigation.  [SOF ¶ 24]  Thus, for the reasons explained in Defendants' First MSJ re Costs (at 7), RID has not "incurred" that $83,810.08 G&K payment, and therefore RID cannot recover that amount under CERCLA § 107(a).  [*See, e.g.*, Dkt. 1110 (First MSJ re Costs) at 7]  Upon subtracting this $83,810.08 item from the $545,940.72 net amount set forth in Part I above, the net amount of RID's Remaining Claimed Costs is further reduced to $462,130.64.

---

[4] Defendants do not concede that RID properly applied for and obtained these "reimbursements" from the ADEQ.  Among other things, contrary to representations made in the applications that were submitted to the ADEQ by or on behalf of RID, various amounts included in those applications had not in fact been incurred or paid by RID.  For purposes of this Motion, however, whether RID properly applied for and obtained those reimbursements is immaterial.  What is material here is that the ADEQ has paid RID a total of $624,094.75 as "reimbursement" for response costs that are being sought by RID in this action.

### III.    RID'S CLAIMED $530,388.07 FOR "TASK 2 COSTS" IS NOT RECOVERABLE.

To establish a prima facie case under CERCLA, RID has the burden of proving that it "incurred" its claimed costs as "necessary costs of response . . . consistent with the national contingency plan."  42 U.S.C. § 9607(a)(4)(B); *Carson Harbor Village, Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1153 (C.D. Cal. 2003) ("The Ninth Circuit has consistently stated that incurring response costs that are necessary *and* consistent with the NCP is an essential element of a private CERCLA action."); *Santa Clara Valley Water Dist. v. Olin Corp.*, 655 F. Supp. 2d 1048, 1058 (N.D. Cal. 2009) ("[T]o be recoverable, the claimed cost must be: 1) a 'cost of response;' 2) 'necessary;' and 3) incurred consistent with the national contingency plan.").  RID cannot recover costs for any activities that are not "addressed to" "a threat to human health or the environment" or that "relate[] to the removal of [contamination] in only the most attenuated of senses." *Santa Clara Valley*, 655 F. Supp. 2d at 1057, 1059 (granting partial summary judgment against claimed costs); *see also City of Moses Lake v. United States*, 458 F. Supp. 2d 1198, 1218–1221 (E.D. Wash. 2006) (certain claimed costs of response were not recoverable because they were not "necessary" and were not undertaken "in response" to the contamination); *Young v. United States*, 394 F.3d 858, 864 (10th Cir. 2005) (affirming judgment holding claimed costs unrecoverable where "no nexus exists between the costs Plaintiffs expended and an actual effort to cleanup the environmental contamination").  Thus, CERCLA bars recovery of any cost that a RID cannot prove is "closely tied to the actual cleanup." *Key Tronic v. United States*, 511 U.S. 809, 820 (1994).

Based on these principles, courts recognize that a party who seeks recovery of expenses arising from normal business operations "is improperly using CERCLA as a device for requiring defendants to share the expense of improving, not remediating, its property." *Sealy Connecticut, Inc. v. Litton Indus., Inc.*, 93 F. Supp. 2d 177, 188 (D. Conn. 2000).  CERCLA prohibits such attempts to pass off business-infrastructure upgrades as "necessary costs of response." *See City of Moses Lake*, 458 F. Supp. 2d at

1218 (ruling costs unrecoverable that "were not incurred in 'response' to the contamination of the City's wells, but were merely for standard improvements to the City's water utility"); *G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 386 (7th Cir. 1995) ("The statutory limitation to 'necessary' costs of cleaning up is important. Without it there would be no check on the temptation to improve one's property and charge the expense of improvement to someone else.").

Here, RID seeks recovery of $530,388.07 for what its damages disclosures describe as "costs associated with Task 2 well investigations" or "Task 2 Costs."  [SOF ¶ 25] According to RID's counsel, "Task 2 costs are associated with [RID's] installation of RID Well 111-R to replace RID Well 111."  [SOF ¶ 26]  But the record shows that RID's installation of Well 111-R is not tied at all—let alone "closely tied"—to the actual cleanup.

RID's Superintendent, Donavan Neese, testified that "[RID] sometimes ha[s] to redrill a well" "[a]nd that's just part of normal operations," "[b]ecause you've got a certain level of demand and you need to keep the water supply up, and if you have wells that go down or go out of service, you may have to drill a new one."  [SOF ¶ 27]  That is precisely the case with Well 111-R.  RID installed the original Well 111 in 1943.  [SOF ¶ 28]  In or about 2003, the original RID Well 111 "collapsed," "died of old age," and became "no longer functional or serviceable."  [SOF ¶ 29]  Thus, RID's installation of Well 111-R to replace the original Well 111 was simply part of RID's normal business operations to replace a well that died after 60 years of operation and to obtain 3,000-gallons/minute of additional water that RID now sells to its irrigation customers.  [SOF ¶¶ 27-31]  Further, RID "do[es]n't treat [Well 111-R's] water" and, "at the time of the ERA ["Early Response Action"] or Modified ERA" conditionally approved by the ADEQ, RID never "anticipated Well 111 to be one of the wells subject to treatment."  [SOF ¶¶ 32-33][5]

---

[5] Even if treatment did occur at Well 111-R, it would not affect the argument here, because treating water to drinking water levels that was then supplied for irrigation (not drinking) purposes would not represent a necessary cost of response. *See, e.g.*, *In re Bell*

Notwithstanding these undisputed facts, RID still seeks to recover costs for the installation of Well 111-R.  Specifically, RID has claimed that the ADEQ's conditional approval of RID's ERA Work Plan necessitated installation of Well 111-R, because (i) the ADEQ purportedly required RID to perform "well investigation activities" during the summertime; (ii) summertime is when RID must operate all of its other wells to meet customer demand for irrigation water; (iii) conducting well investigation activities at the other wells prevented RID from operating all of its wells to meet customer demand; and thus (iv) to meet customer demand, RID was required to install Well 111-R to replace the water that it could not obtain from other wells during well investigation activities.[6]

Even assuming for the sake of argument that such a set of facts might justify these costs, RID's factual assertions find no support in the record.  RID schedules times to shut down its entire well system when necessary to perform such maintenance on or improvements to its system.  [SOF ¶ 34]  And the ADEQ's conditional approval of RID's Well Investigation Work Plan expressly accommodated "the need for RID's flexibility concerning water supply demands," "leav[ing] the exact timing of [well investigation] testing to RID's discretion."  [SOF ¶ 35]  More fully, the ADEQ stated:

> ADEQ believes it would be beneficial to conduct all the testing at each well at the same time but will leave the exact timing of testing to RID's discretion.  ADEQ understands the need for RID's flexibility concerning water supply demands. . . . ADEQ is approving this abridged workplan to ensure that RID can conduct work during this time of operational shut down for the winter months. . . . If conditions exist that all the RID wells are not needed to meet production demands in February, ADEQ requests that RID continue with this investigation until completed.

---

*Petroleum Servs., Inc.*, 3 F.3d 889, 905-06 (5th Cir. 1993) (ruling that costs from EPA's provision of alternative drinking water supplies that no one used were "arbitrary and capricious, as well as a waste of money"—*i.e.*, not necessary costs of response).

[6] *See, e.g.*, deposition transcript excerpts of Joel Peterson at 312:24-313:6; 313:21-314:2, attached hereto as Ex. A (RID installed Well 111R "in response to ADEQ's . . . requirement that [RID] conduct well investigation during the summertime"); deposition Exhibit 403 at SHEM005415, attached hereto as Ex. B ("A new well has been drilled to replace out-of-service well RID-111.  We told EPA we were replacing the well to meet ADEQ conditions of ERA approval.").

[*Id.*]  In other words, contrary to RID's litigation-inspired theory, the ADEQ expressly authorized RID to perform well investigation during the irrigation off-season—making the drilling a new well unnecessary to any actual cleanup.

Thus, the record shows that RID's claim for $530,388.07 in "Task 2 Costs" constitutes an effort to do precisely what the law prohibits—*i.e.*, "improperly [using] CERCLA as a device for requiring defendants to share the expense of improving, not remediating, [RID's] property."  *Sealy*, 93 F. Supp. 2d at 188.  Because these costs are not "necessary costs of response" but—by RID's own admission—are "just part of [RID's] normal operations" (SOF ¶ 27), they are not recoverable under CERCLA.  Upon subtracting this $530,388.07 amount from the $462,130.64 net amount set forth in Part II above, the net amount of RID's Remaining Claimed Costs is reduced to well below zero.

## IV.  RID'S CLAIMED $485,376.77 FOR "DISTRICT GENERAL RESPONSE COSTS" IS ALSO UNRECOVERABLE.

In its Second Supplemental Disclosure Statement, RID described $646,268.88 of its Remaining Claimed Costs as "[a]ll other RID general response costs except those listed in Activity 1 and 2," or "District General Response Costs."  [SOF ¶ 36]  Following RID's recent review of billings included in the District General Response Costs, however, RID reduced that $646,268.88 amount to $485,376.77.  [SOF ¶¶ 7-12, 36]  Although the arguments in Parts I-III above suffice to demonstrate that RID cannot recover any of its Remaining Claimed Costs, this Part IV explains why, in any event, RID's claimed $485,376.77 in District General Response Costs is also unrecoverable.

### A.  The District General Response Costs Include Double-Counted Amounts.

First, RID's assertion that its claimed District General Response Costs exclude "those [costs] listed in [RID's] Activity 1 and 2" (SOF ¶ 36), is wrong.  In fact, the record shows that RID has double-counted at least $29,349.62 paid to Synergy—which RID has included both as "RID Water Quality Monitoring Costs" under "Activity 1," and as "District General Response Costs" under "Activity 5."  [SOF ¶ 37]  RID's disclosures even cite the very same Synergy invoices (with different Bates-numbers) to support each

of those double-counted amounts.  [*Id.*]  All such double-counted amounts within RID's claimed District General Response Costs, including this $29,349.62 amount, are indisputably unrecoverable. [7]

**B.    RID Has Failed To Present Supporting Documentation For Certain Claimed Labor Costs.**

RID's claimed District General Response Costs also include $21,835.84 for time allegedly spent by its former Superintendent, Stan Ashby.  [SOF ¶ 38]  But RID has failed to produce any time records or other backup documentation for that claimed time.  [*Id.*]  Instead, RID relies solely on an after-the-fact estimate of the portions of Mr. Ashby's time that allegedly were devoted to remediation activities during 2009-2011.  [SOF ¶ 39]  Such unverifiable after-the-fact estimates, however, fail to satisfy RID's burden of proof under CERCLA.  *See Wichita v. APCO Oil Corp.*, 306 F. Supp. 2d 1040, 1096  (D. Kan. 2003) (finding plaintiff's payroll records—which plaintiff calculated long after the employees logged the hours—were "too speculative" to be relied upon); *see also Pneumo Abex Corp. v. Bessemer & Lake Erie RR Co.*, 936 F. Supp. 1250, 1265-66 (E.D. Va. 1996) ("deficiencies of Plaintiffs' proof in this case prevent recovery for most of their claims for the salaries of the employees of the City and the PRHA," because "[t]he Court is unable to verify such claims"); *V.I. Dept. Planning & Nat. Res. v. St. Croix Renaissance Grp.*, 527 F. App'x 212, 214 (3d Cir. 2013) (over 4,000 hours of claimed employee time did not qualify as "response costs," because the plaintiff failed to maintain adequate records of those expenses).  Therefore, this $21,835.84 amount claimed for Mr. Ashby's time is not recoverable.

**C.    The Claimed District General Response Costs Include Unrecoverable Amounts Related To Litigation And Marketing Of Drinking Water.**

Consistent with *Key Tronic* and other authorities cited in Part II above, RID's counsel has confirmed, first, that "fees incurred as 'litigation expenses' or 'in pursuing

---

[7] Although this Motion does not rely on any other such instances, Defendants note that RID's Remaining Claimed Costs also appear to include other instances of double-counting.

litigation'" (including "legal services performed in connection with [settlement] negotiations") are not recoverable response costs under CERCLA, and that RID therefore does not intend to seek recovery of any such amounts; and, second, that RID "is not . . . seeking to recover . . . any of the costs attendant to selling or conveying drinking water to customers." [SOF ¶¶ 40-41] Notwithstanding those statements and RID's recent review of its District General Response Cost invoices, RID's purported supporting documentation—including internal labor cost documents, invoices from contractors, and invoices from law firms—still contains entries for these very types of unrecoverable amounts. [SOF ¶¶ 42-43] For example, RID's documentation for the claimed District General Response Costs includes a ▮▮▮▮ invoice with $▮▮▮▮▮ for the "▮▮▮ Litigation"—which is a lawsuit involving RID that does not relate to this case or to groundwater remediation. [SOF ¶ 43]

Further, RID's documentation for other claimed labor, contractor, and law firm costs also includes entries for other indisputably unrecoverable activities. For example, documentation of Donovan Neese's time includes entries such as "▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮," "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," "▮▮▮▮▮▮▮▮▮▮▮," "▮▮▮ ▮▮▮▮," "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," and "▮▮▮▮ ▮▮▮▮." [SOF ¶¶ 44-45] Similarly, (i) invoices from consultant EUSI, Inc. ("EUSI") include entries such as "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"; (ii) invoices from law firm Burch & Cracchiolo ("B&C") include entries such as "▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," and "▮▮▮▮▮▮▮▮▮▮▮▮▮"; and (iii) invoices from law firm Ryley, Carlock & Applewhite ("RC&A") include entries such as "▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." [Id.] The dollar amount of such unrecoverable entries totals at least $8,985.52. [SOF ¶ 45]

1    Thus, based on the above, at least another $███████ of RID's claimed District

2    General Response Costs (*i.e.*, ██████████ for the ████████ litigation, and $8,985.52 for the

3    other entries referenced above) relate to activities that indisputably are unrecoverable

4    under CERCLA.  [SOF ¶¶ 43-45]

5          **D.**    **RID's Failure To Segregate Out And Prove Any Particular Amount As**
                   **"Necessary Costs Of Response," Prevents The Court From Determining**

6                       **Whether Any Of The District General Response Costs Are Recoverable.**

7    In addition to the specific points discussed in Part IV (A)-(C) above, RID has failed

8    to carry its burden of proof regarding its claimed District General Response Costs.  In this

9    regard, RID bears the burden to prove which (if any) of those claimed costs constitute

10   "necessary costs of response" incurred consistent with the National Contingency Plan.  As

11   one court has explained, even where a CERCLA plaintiff's cost documentation may

12   "reflect some potentially recoverable remediation work comingled with [other

13   unrecoverable non-remediation activities], [the plaintiff's] failure to itemize the fees

14   charged . . . for these different activities makes it impossible for the Court to discern

15   which activities might be reimbursable." *Sealy*, 93 F. Supp. 2d at 193, n.6.  "Thus, [the]

16   plaintiff has not met its burden of affirmatively proving that any particular portion of the

17   disputed costs items were necessary response costs"; and "the court will not consider any

18   portion of the disputed [amount] as recoverable costs." *Ekotek Site PRP Comm., Inc. v.*

19   *Self*, 1 F. Supp. 2d 1282, 1295 (D. Utah 1998) (refusing to consider disputed amounts as

20   recoverable costs where "[p]laintiff ha[d] not segregated out those costs incurred [for

21   remediation activities]"); *see also Sealy*, 93 F. Supp. 2d at 192, 193, n.6 ("Sealy . . . failed

22   to carry its burden of proof demonstrating these costs were tied to the remediation";

23   "[g]iven Sealy's failure to segregate [remediation-related] expenses from [other non-

24   remediation] work or clearly identify the basis for their recovery, these costs . . . are

25   precluded from recovery"); *Pneumo Abex Corp.*, 936 F. Supp. at 1262-63 (denying

26   recovery where "the Court, through its examination of the exhibits, is unable to discern

27   whether many of the expenses incurred are 'closely tied to the actual cleanup'"); *Wichita*,

28   306 F. Supp. 2d at 1094 ("Plaintiff . . . failed to meet its burden of proving that these were

1    response costs related to the Site," because plaintiffs provided "the court [] no means to

2    determine that certain charges [were] for work at the Site, while others [were] not.").

3        Here, as in the cases cited above, the documentation RID has disclosed in support

4    of its claimed District General Response Costs constitutes a tangled mess that comingles

5    indisputably unrecoverable amounts with other amounts for which the documentation is

6    so incomplete, vague, and/or redacted as to prevent any recoverability determination.

7    Indeed, in addition to the indisputably unrecoverable costs discussed above, RID's

8    documentation for its remaining claimed District General Response Costs includes

9    numerous other entries that appear likely to also relate to unrecoverable activities of the

10   type discussed above, and at a minimum cannot support a cost-recovery claim for those

11   activities.  Examples of such likely unrecoverable entries include: "



12   "

13   "

14   "

15   "

16   "                              ."  [SOF ¶ 46]

17       With these indisputably unrecoverable or likely unrecoverable entries, RID

18   comingles many other entries that are so incomplete, vague, ambiguous, generic, and/or

19   redacted as to prevent any determination regarding which amounts (if any) might relate to

20   potentially recoverable activities.  For example, the time entries for RID's Superintendent,

21   Mr. Neese, include descriptions such as "

22   "

23   ," and "                              ."  [SOF ¶ 47]  Indeed,

24   Mr. Neese's time entries are so vague, generic, and/or redacted that, in his deposition,

25   even he was unable to discern the actual work behind those entries.  [SOF ¶ 48 ("Q: Is

26   there anything you can tell me to shed light on why these time entries might be associated

27   with the remediation project?  A:  No.")]

28

1    Numerous entries in the invoices for RID's contractors are similarly vague,
2  generic, and/or redacted.  The EUSI invoices, for example, contain numerous entries
3  consisting of the boilerplate incantation of the word "Remediation," coupled with a short
4  and vague phrase and/or a redaction.  [SOF ¶ 49]  Examples include entries for
5  "████████████," "████████████████," "██████████████████
6  ████████████████," "████████████," and just "████████."
7  [Id.]  The EUSI invoices also include numerous other entries that do not include the word
8  "Remediation," but are similarly vague, generic, and/or redacted—e.g.:  "████████
9  ██," "████████████," "████████████," "██████," and "████████
10  ████████████████."  [Id.]  Once again, even RID's Superintendent, Mr.
11  Neese, acknowledged that time descriptions in these EUSI invoices were "so general" or
12  redacted that he could not discern what actual work EUSI was doing.  [SOF ¶ 50]
13    The invoices from the RC&A and B&C law firms are also replete with time entries
14  that are useless in trying to determine whether any of those claimed costs might be
15  recoverable.  For example, the RC&A invoices include entries such as "████████
16  ████████"; "████████████████████"; "████████████
17  █"; and "████████████."  [SOF
18  ¶ 51]  Similarly, the B&C invoices include entries such as "████████████████
19  ████████████"; "████████████████████████
20  ████████"; "████████████████████"; "████████
21  ████████"; "████████████"; and "████████████████."  [SOF ¶ 52][8]

_____

[8] Insofar as RID has redacted time entries or other cost documentation based on a
claim of work product, those redactions must, by definition, relate to litigation, and not to
the cleanup—which, for this reason alone, would render those items not recoverable under
Key Tronic.  511 U.S. at 819 ("CERCLA § 107 does not provide for the award of private
litigants' attorney's fees associated with bringing a cost recovery action").  Similarly,
insofar as RID has also made redactions based on a claim of attorney-client privilege, RID
has provided no basis for the Court to determine which of those entries relate to litigation
and as a result are unrecoverable, or how any particular cost associated with a privileged
communication might be recoverable in this case.

The above are just examples of the vague, generic, non-descriptive, and/or redacted nature of RID's purported supporting documentation, and many more examples appear in the above-cited paragraphs of the SOF and the accompanying exhibits.  Based on this record, it is beyond dispute that RID "has not met its burden of affirmatively proving that any particular portion of the disputed costs items were necessary response costs"; and thus, "the court [should] not consider any portion of the disputed [amount] as recoverable costs." *Ekotek*, 1 F. Supp. 2d at 1295.  Therefore, even if the other arguments set forth in this Motion did not already eliminate the entirety of RID's Remaining Claimed Costs (which they do), RID's failure to carry its burden of proof regarding its $485,376.77 in claimed District General Response Costs would suffice to do so.[9]

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of Defendants as to the entirety of RID's Remaining Claimed Costs.

Dated:  August 19, 2016

Respectfully submitted,

**SALMON, LEWIS, & WELDON, P.L.C.**

By: s/  G. Van Velsor Wolf Jr.
G. Van Velsor Wolf Jr.
Michael K. Foy
2850 East Camelback Road, Suite 200
Phoenix, Arizona 85016

*Attorneys for Defendant Air Liquide America Specialty Gases, L.L.C.*

---

[9] Defendants note that, in addition to the $624,094.75 offset based on the payments RID received from the ADEQ (*see* Part I above), RID's cost claim (if any) also will ultimately be offset based on settlement proceeds received by RID—which to date, according to RID, total at least $395,000.00, not including the as-yet undisclosed amount of the recent settlement with Defendant ChemResearch.  *See United Alloys, Inc. v. Baker*, 797 F. Supp. 2d 974, 1002 (C.D. Cal. 2011) (offsetting plaintiff's reimbursable response costs by amounts received in settlement, because CERCLA's "general equitable principles . . . [require] the prohibition of double recovery").

1

**SNELL & WILMER L.L.P.**

2

3      By: s/ Mitchell J. Klein
            Mitchell J. Klein
4          J. Matthew Derstine
            Timothy J. Sabo
5          400 East Van Buren Street, Suite 1900
            Phoenix, Arizona 85004
6

7          Thomas Loquvam
            Pinnacle West Capital Corporation
8          Post Office Box 53999 MS8695
            Phoenix, Arizona 85072-3999
9

10     *Attorneys for Defendant Arizona Public
       Service Company*
11
       **SQUIRE PATTON BOGGS (US) LLP**
12

13     By: s/ Christopher D. Thomas
            Christopher D. Thomas
14         Matthew L. Rojas
            One East Washington Street, Suite 2700
15         Phoenix, Arizona 85004
16
            Stephen L. Wetherell
17         Phoenix City Attorney's Office
            Civil Division
18         200 West Washington Street, Suite 1300
            Phoenix, Arizona 85003-1611
19

20     *Attorneys for Defendant City of Phoenix*

21

22

23

24

25

26

27

28

-14-

1

**PERKINS COIE LLP**

2

3
By: s/ Michael P. Berman
        Shane R. Swindle

4
        Michael P. Berman
        P. Derek Petersen

5
        2901 North Central Avenue, Suite 2000

6
        Phoenix, Arizona  85012-2788

7
*Attorneys for Defendant Corning Incorporated*

8
**POLSINELLI PC**

9

10
By: s/ Troy B. Froderman
        Troy B. Froderman

11
        Jonathan G. Brinson
        One East Washington Street, Suite 1200

12
        Phoenix, Arizona 85004

13

14
        Mitchell J. Klein
        **SNELL & WILMER L.L.P.**

15
        400 East Van Buren St., Suite 1900
        Phoenix, Arizona 85004

16

17
*Attorneys for Defendant Dolphin Incorporated*

18
**SHOOK, HARDY & BACON LLP**

19

20
By: s/ John M. Barkett
        John M. Barkett

21
        Suite 3200
        201 South Biscayne Boulevard

22
        Miami, Florida 33131-4332

23
*Attorneys for Defendant Freescale*
*Semiconductor, Inc.*

24

25

26

27

28

1
2

**JENNINGS, HAUG & CUNNINGHAM LLP**

3
4
5

By: s/ Karen S. Gaylord
    Karen S. Gaylord
    2800 North Central Avenue, Suite 1800
    Phoenix, Arizona 85004-1049

6
7
8
9
10

    Sean Morris (*Pro Hac Vice*)
    Eric D. Mason (*Pro Hac Vice*)
    Sean A. McCormick (*Pro Hac Vice*)
    **ARNOLD & PORTER LLP**
    777 South Figueroa Street, 44th Floor
    Los Angeles, California 90017-5844

11

*Attorneys for Defendant Honeywell*

12

**SNELL & WILMER L.L.P.**

13
14
15
16

By: s/ Mitchell J. Klein
    Mitchell J. Klein
    Maribeth M. Klein
    400 East Van Buren Street, Suite 1900
    Phoenix, Arizona 85004-2202

17

*Attorneys for Defendant ITT Corporation*

18

**FENNEMORE CRAIG PC**

19
20
21
22

By: s/ Scott K. Ames
    John M. Pearce
    Scott K. Ames
    2394 East Camelback Road, Suite 600
    Phoenix, Arizona 85016-3429

23
24

*Attorneys for Defendant Kinder Morgan Energy Partners, LP*

25
26
27
28

1
2

**WILLIAM G. MONTGOMERY**
**MARICOPA COUNTY ATTORNEY**

3
4
5
6
7

By: s/ Ann Thompson Uglietta
    Ann Thompson Uglietta
    J. Kenneth Mangum
    Deputy County Attorneys
    Civil Services Division
    222 North Central Avenue, Suite 1100
    Phoenix, Arizona 85004

8

*Attorneys for Defendant Maricopa County*

9

**THE CAVANAGH LAW FIRM, P.A.**

10
11
12
13

By: s/ Jerry D. Worsham II
    Jerry D. Worsham II
    1850 North Central Avenue, Suite 2400
    Phoenix, Arizona 85004

14

*Attorneys for Defendant Meritor, Inc.*

15

**FENNEMORE CRAIG PC**

16
17
18
19
20

By: s/ Scott K. Ames
    Christopher L. Callahan
    Phillip F. Fargotstein
    Scott K. Ames
    2394 East Camelback Road, Suite 600
    Phoenix, Arizona 85016-3429

21

*Attorneys for Defendant Nucor Corporation*

22
23
24
25
26
27
28

**LEWIS ROCA ROTHGERBER LLP**

By: s/ Stanley B. Lutz
    Carla A. Consoli
    Stanley B. Lutz
    Marla Hudgens
    201 East Washington Street, Suite 1200
    Phoenix, Arizona 85004-2595

*Attorneys for Defendant Prudential Overall Supply*

**K&L GATES, LLP**

By: s/ Matthew G. Ball
    Matthew G. Ball
    Jason N. Haycock
    Four Embarcadero Center, Suite 1200
    San Francisco, California 94111

*Attorneys for Defendant Reynolds Metals Company*

**BALLARD SPAHR LLP**

By: s/ David J. Armstrong
    David J. Armstrong
    Craig C. Hoffman
    Lea A. Phillips
    1 East Washington Street, Suite 2300
    Phoenix, Arizona 85004-2555

*Attorneys for Defendant Salt River Project Agricultural Improvement and Power District*

1

**BOOTH LLP**

2

3   By: s/ Joshua Levine
        Joshua Levine
4       1849 Sawtelle Boulevard, Suite 500
        Los Angeles, California 90025
5

6   *Attorneys for Defendant Textron, Inc.*

7   **PEARSON LAW GROUP LLC**

8

9   By: s/ William W. Pearson
        William W. Pearson
10      1221 East Osborn Road, Suite 101
        Phoenix, Arizona 85014
11

12  *Attorneys for Defendant Union Pacific Railroad Company*

13  **VERIS LAW GROUP PLLC**

14

15  By: s/ Michelle Rosenthal
        Michelle U. Rosenthal
16      Gregory T. Hixson
        Denver R. Gant
17      1809 Seventh Avenue, Suite 1400
        Seattle, Washington 98101
18

19  *Attorneys for Defendant Univar USA Inc.*

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

☒      I hereby certify that on August 19, 2016, I electronically transmitted the attached documents to the Clerk's Office and to the counsel of record who are CM/ECF registrants using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

☒      I hereby certify that on August 22, 2016, I served the attached document by FedEx on:

> Honorable David A. Ezra
> United States District Court
> John H. Wood, Jr. United States Courthouse
> 655 East Cesar E. Chavez Blvd., 3rd Floor
> San Antonio, Texas  78206

☒      I hereby certify that on August 19, 2016, I served the attached document by first class mail on the following, who are not registered participants of the CM/ECF System:

> Walker Power Systems, Inc.
> c/o Jeffrey R. Conover
> 1301 East Jackson Street
> Phoenix, Arizona 85034

*Pro Se*

s/ Shawne Murphy