Jerry C. Bonnett (AZ 003381)
Andrew S. Friedman (AZ 005425)
Francis J. Balint, Jr. (AZ 007669)
Guy A. Hanson (AZ 013549)
Andrew M. Evans (AZ 024917)
**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
2325 East Camelback Road, Suite 300
Phoenix, Arizona  85016
P:  (602) 274-1100
F:  (602) 274-1199
jbonnett@bffb.com
afriedman@bffb.com
fbalint@bffb.com
aevans@bffb.com

*Attorneys for Plaintiff Roosevelt Irrigation District*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roosevelt Irrigation District, a political subdivision of the State of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>Salt River Project Agricultural Improvement And Power District, *et al.*<br><br>Defendants. | No.   2:10-CV-00290-DAE (BGM)<br><br>**PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: NCP COMPLIANCE AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. P. 56 and LR Civ. 56.1(b), Plaintiff Roosevelt Irrigation District ("RID") submits this Controverting Statement of Facts ("CSOF-3") in Opposition to Defendants' Motion for Summary Judgment Re: NCP Compliance

**A.    RID's Response to Defendants' Statement of Facts ("SOF")**

1. For purposes of Defendants' Motion for Summary re: NCP Compliance ("MSJ"), RID does not contest SOF ¶ 1.

2. For purposes of the MSJ, RID does not contest SOF ¶ 2.

1

3. For purposes of the MSJ, RID does not contest SOF ¶ 3.

4. For purposes of the MSJ, RID does not contest SOF ¶ 4.

5. For purposes of the MSJ, RID does not contest that pursuant to the cited portions of Mr. Peterson's deposition, RID wells 89, 92, and 95 discharge into the Main Canal.

6. For purposes of the MSJ, RID does not contest SOF ¶ 6.

7. For purposes of the MSJ, RID does not contest that it *presently* cannot use its canal system to convey drinking water, but states that both Messrs. Peterson and Shirley testified in their depositions that such might be possible in the future. *See* Peterson Dep. (Ex. 2 to SOF [Doc. 1321-1]) at 46:24–47:15, 60:15–21; Shirley Dep. (Ex. 1 to SOF [Doc. 1321-1]) at 642:25–643:2; 645:16–21.

8. For purposes of the MSJ, RID does not contest SOF ¶ 8.

9. RID objects to SOF ¶ 9 as entirely irrelevant to any of Plaintiff's claims or Defendants' defenses.

10. RID objects to Defendants' characterization of Mr. Peterson's testimony as set forth in SOF ¶ 10, *i.e.*, that the contaminants Defendants have undisputedly deposited into the groundwater "do not impair" RID's delivery of irrigation water. The cited portions of Mr. Peterson's testimony demonstrate that the untreated water is "fit . . . for irrigation use." Peterson Dep. (Ex. 2 to SOF) at 788:14–16. But Mr. Peterson also testified that "[o]ne of the surface water quality criteria is for drinking water. [The untreated water] does not comply with drinking water surface water quality standards." *Id.* at 788:8-10.

11. RID objects to SOF ¶ 11. The cited portions of Mr. Shirley's deposition do not support the broad conclusion asserted by Defendants that water conveyed in RID canals "meets water quality standards for volatile organic compounds ('VOCs') prior to delivery to RID's irrigation customers." Mr. Shirley testified that there are various state and federal standards for various VOCs for various uses. Shirley Dep. (Ex. 1 to SOF) at 60:1–61:10. It is thus inaccurate to broadly represent Mr. Shirley as having testified that

untreated water "meets water quality standards" without specifying what "standards" the water supposedly meets.

12. For purposes of the MSJ, RID does not dispute that the Remedial Investigation Report contains the language quoted in SOF ¶ 12, and asserts that the Report speaks for itself and should be read and understood as a whole.

13. For purposes of the MSJ, RID does not contest SOF ¶ 13, although it is more properly characterized as a legal citation than a statement of fact.

14. RID objects to Defendants' unsupported representations regarding the intent of Arizona's Groundwater Code, the provisions of which speak for themselves.

15. RID objects to Defendants' characterization of Arizona law. Arizona Laws 1997, Chapter 287, Section 51 states: "In determining compliance with applicable conservation requirements adopted pursuant to sections 45–566, 45–567 and 45–568, Arizona Revised Statutes, the department of water resources shall account for groundwater withdrawn pursuant to approved remedial action projects under CERCLA or title 49, Arizona Revised Statutes, consistent with the accounting for surface water."

16. RID contests SOF ¶ 16. On its face, Defendants' characterization of RID's interaction is unsupported by any citation to the factual record, save its citation of Mr. Peterson's testimony that RID intended, from the beginning of the remediation project, to restore the groundwater pumped from its wells to the quality it was prior to being contaminated by Defendants. As has been stated *ad nauseum* throughout this litigation, RID's subjective motivations for remediating its contaminated water is entirely irrelevant to its CERCLA claims: "Although a private plaintiff will almost always have a business or financial motive for cleaning up a site, such subjective intent is simply not part of the calculus." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 872 (9th Cir. 2001).

17. For purposes of the MSJ, RID does not contest SOF ¶ 17.

18. RID contests the first sentence of SOF ¶ 18. The documents cited in ¶ 18, including the 2013 Engagement Letter and the Auffhammer Declaration, establish that G&K withdrew as legal counsel for RID with regard to this CERCLA action. For

3

purposes of the MSJ, RID does not contest that G&K continued to play a role in other aspects of RID's remediation efforts, nor that G&K engaged technical consultants.

19. For purposes of the MSJ, RID does not contest SOF ¶ 19.

20. For purposes of the MSJ, RID does not contest that it submitted a series of reports that set forth its remedial action plan. RID contests Defendants characterization of those reports "[a]s detailed below."

21. RID contests SOF ¶ 21. *See* CSOF-3 ¶¶ 80–84 and Ex. 1.

22. RID contests SOF ¶ 22. *See* PCSOF-3 ¶¶ 80–84.

23. For purposes of the MSJ, RID does not contest SOF ¶ 23.

24. For purposes of the MSJ, RID does not contest SOF ¶ 24.

25. RID contests SOF ¶ 25. The Implementation Plan states that RID "currently pumps groundwater primarily for agricultural irrigation uses." But it also states that reasonably foreseeable beneficial uses of groundwater pumped from the WVBA Site "include domestic, industrial, irrigation, utility, commercial, stock, testing, and municipal" uses, and that "future use of water pumped by RID from the WVBA Site would include potable uses if appropriate treatment were conducted."

26. RID contests SOF ¶ 26. *See* CSOF-3 ¶ 85–87.

27. For purposes of the MSJ, RID does not contest SOF ¶ 27.

28. For purposes of the MSJ, RID does not contest SOF ¶ 28.

29. For purposes of the MSJ, RID does not contest SOF ¶ 29.

30. For purposes of the MSJ, RID does not contest SOF ¶ 30.

31. For purposes of the MSJ, RID does not contest SOF ¶ 31.

32. RID contests SOF ¶ 32. *See* CSOF-3 ¶¶ 82–87.

33. For purposes of the MSJ, RID does not contest SOF ¶ 33, although it notes that the ADEQ approval letter speaks for itself and should be read as a whole, and in connection with the entire ADEQ approval process.

34. For purposes of the MSJ, RID does not contest SOF ¶ 34, although it notes that the ADEQ approval letter speaks for itself and should be read as a whole, and in

1 connection with the entire ADEQ approval process.

2  35. RID objects to SOF ¶ 35, which is nothing more than Defendants' inaccurate interpretation of ADEQ's position in approving RID's ERA. ADEQ's approval must be understood in the context of the CERCLA statutory scheme as a whole, including relevant case law, which holds that private parties acting with state agency oversight, are entitled to a presumption of consistency with the NCP. *Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928, 950 (9th Cir. 2002).

36. For purposes of the MSJ, RID does not contest SOF ¶ 36.

37. For purposes of the MSJ, RID does not contest SOF ¶ 37.

38. For purposes of the MSJ, RID does not contest SOF ¶ 38.

39. RID objects to Defendants' characterization of Synergy's analysis leading to its conclusions set forth in the MERA. As set forth in the MERA itself and as is evidence from the thousands of pages of submissions made to ADEQ throughout the approval process, RID's proposed remedy was a result of years of studies and testing, and a rigorous public vetting process in which Defendants extensively participated. PSOF-1 ¶¶ 36–37; *see also* MERA Excerpts (Ex. 8 to SOF) at 21 ("[T]he Modified ERA Work Plan was developed based on an evaluation of Site conditions, the documented impact and threatened impact on RID wells and operations, a preliminary analysis of potential response actions, and the extensive experience of RID's technical consultants on similar groundwater contamination sites.").

40. RID contests SOF ¶ 40. *See* CSOF-3 ¶¶ 82–87.

41. RID contests SOF ¶ 41. *See* ¶ 35, *supra*.

42. For purposes of the MSJ, RID does not contest SOF ¶ 42.

43. For purposes of the MSJ, RID does not contest SOF ¶ 43.

44. For purposes of the MSJ, RID does not contest that Synergy submitted a draft Feasibility Study in July 2014 and a Revised Draft Feasibility Study in November 2014, but contests Defendants' assertion that either the timing or the content of the studies rendered them deficient with regard to the NCP. The standard is "substantial

1  compliance" when evaluating the remedial action "as a whole."  NCP, 55 Fed. Reg.
2  8666, 8794 (March 8, 1990) ("where a … private party undertakes the clean-up (in the
3  face of a lack of action by the responsible party), it would be inequitable to allow the
4  responsible party to use minor procedural discrepancies to defeat reimbursement for an
5  environmentally sound cleanup"); *Waste Mgt. of Alameda County, Inc. v. E. Bay Regl.*
6  *Park Dist.*, 135 F. Supp. 2d 1071, 1104 (N.D. Cal. 2001) (feasibility study, while
7  certainly not perfect, "substantially" complied with the applicable requirements set forth
8  in the NCP).  RID's FS substantially complied with the requirements of the NCP.  *See*
9  PSOF-1 ¶ 52.

10      45.    For purposes of the MSJ, RID does not contest SOF ¶ 45.
11      46.    For purposes of the MSJ, RID does not contest SOF ¶ 46.
12      47.    For purposes of the MSJ, RID does not contest SOF ¶ 47.
13      48.    For purposes of the MSJ, RID does not contest SOF ¶ 48.
14      49.    RID objects to SOF ¶ 49.  *See* CSOF-3 ¶¶ 82–87.
15      50.    For purposes of the MSJ, RID does not contest SOF ¶ 50.
16      51.    For purposes of the MSJ, RID does not contest SOF ¶ 51, but notes that
17  treatment to current use is not the standard under Arizona law, which requires any
18  remedial action to address "reasonably foreseeable end uses."
19      52.    RID objects to SOF ¶ 52.  The cited portions of Mr. Peterson's deposition
20  do not support the contention that he as unfamiliar with the NCP or its remedy selection
21  criteria.  He testified that he did not know if there were differences between WQARF
22  criteria for a feasibility study and CERCLA criteria for a feasibility study.  Peterson
23  Depo. (Ex. 2 to SOF) at 503:19–23.
24      53.    For purposes of the MSJ, RID does not contest SOF ¶ 53.
25      54.    RID contests SOF ¶ 54. *See* CSOF-3 ¶¶ 85–87.
26      55.    For purposes of the MSJ, RID does not contest SOF ¶ 55.
27      56.    For purposes of the MSJ, RID does not contest SOF ¶ 56. RID notes,
28  however, that ADEQ's approval letter speaks for itself and must be read as a whole.

57. For purposes of the MSJ, RID does not contest SOF ¶ 57. RID notes, however, that ADEQ's approval letter speaks for itself and must be read as a whole.

58. RID contests SOF ¶ 58. RID submitted its Public Health Exposure Assessment and Mitigation Work Plan, which confirmed the presence of VOCs in all samples obtained in and proximal to RID wells and water conveyance systems. (PSOF ¶ 37 [Ex. 1 to Kimball Dec., ¶ 71 (at ECF 15)]). RID's assessment supplemented ADEQ's Remedial Investigation into VOC contamination at the WVBA Site, which noted that the Arizona Department of Health Services completed a health risk assessment associated with the WVBA Site in October 1992, addressing the potential threat to City of Tolleson drinking water wells "in anticipation of potential groundwater contamination … by westerly groundwater movement of the WVBA plume." (PSOF-1 ¶ 6(b) [Neese Dec. Ex. 1]). Defendants do not challenge the sufficiency of ADEQ's RI.

59. For purposes of the MSJ, RID does not contest SOF ¶ 59.

60. For purposes of the MSJ, RID does not contest SOF ¶ 60.

61. RID contests SOF ¶ 61. The cited portion of Mr. Shirley's deposition, on its face, states shat Synergy concluded there was no acute exposure risk from VOCs in the groundwater. It does not support Defendants' contention that Synergy "only evaluated" such risk. Indeed, Mr. Shirley noted in his deposition that the assessment found that there may be a risk of chronic exposure to VOCs. Shirley Depo. at 649:22–650:9.

62. For purposes of the MSJ, RID does not contest that the risk assessment conducted by Synergy was not, in itself, a stand-alone risk assessment. As stated in RID's response to ¶ 58, it supplemented the RI prepared by ADEQ, which <u>did</u> include the risk assessment performed by the Arizona Department of Health Services. Moreover, the West Van Buren Working Group submitted to ADEQ what Defendants claim to have been a "CERCLA-compliant human health assessment" in July 2014. (DSOF-3 ¶¶ 71-72) Accordingly, the ADEQ had full access to all the information Defendants deemed important in the process of publicly vetting and ultimately approving RID's FS.

63. RID contests SOF ¶ 63. As noted earlier, Synergy's exposure assessment concluded there was no acute or imminent health risk from VOC exposure, but that there may be some risk of adverse health effects from chronic exposure to VOCs. *See* Response to SOF ¶ 61.

64. For purposes of the MSJ, RID does not dispute that the Public Health Exposure Assessment contains the language quoted in SOF ¶ 64, and alleges that the Assessment speaks for itself and must be read as a whole.

65. For purposes of the MSJ, RID does not dispute that the Public Health Exposure Assessment contains the language quoted in SOF ¶ 65, and alleges that the Assessment speaks for itself and must be read as a whole.

66. For purposes of the MSJ, RID does not dispute that the Public Health Exposure Assessment contains the language quoted in SOF ¶ 66, and alleges that the Assessment speaks for itself and must be read as a whole.

67. For purposes of the MSJ, RID does not dispute that the ADHS letter contains the language quoted in SOF ¶ 67, and alleges that the Assessment speaks for itself and must be read as a whole.

68. RID contests SOF ¶ 68. The Matrix-CALIBRE Evaluation concludes that "current risks are within acceptable thresholds *for present use*." Ex. 17 to SOF, Table 2 (emphasis added). But it also states that "foreseeable future includes potable use" and that RID's proposed remedy is "reasonable for future potable use of the resource." *Id.*

69. [SOF ¶ 69 left intentionally blank]

70. For purposes of the MSJ, RID does not contest that the quoted language appears in the transcript of the March 3 hearing, but notes that under Ninth Circuit case law, "remedial actions under the NCP do not require a showing of 'immediate' risk." *Washington State Dep't of Transp. v. Washington Nat. Gas Co., Pacificorp*, 59 F.3d 793, 806 (9th Cir. 1995)

71. For purposes of the MSJ, RID does not contest SOF ¶ 71.

72. RID contests SOF ¶ 72, inasmuch as it is limited to current groundwater

8

uses. Indeed, the cited portion of the Haley & Aldrich report acknowledges that VOC concentrations from groundwater samples "have exceeded MCLs at select locations," but deems the estimated health risks to be acceptable based on the fact that "groundwater beneath the WVBA is not *currently* used for municipal purposes" (emphasis added).

73. For purposes of the MSJ, RID does not contest SOF ¶ 73.

74. RID objects to Defendants' characterization of A.R.S.§ 49-287.04 as set forth in SOF ¶ 74. The statute, which speaks for itself, states that "the director shall prepare the record of decision regarding the remedial action plan," but it does not state that written notice of a record of decision is the sole or exclusive means by which ADEQ approves a remedial action, nor does CERCLA make recovery of response costs dependent upon issuance of a formal record of decision. *United Alloys, Inc. v. Baker*, No. CV 93-4722 CBM EX, 2011 WL 2749641, at *20 (C.D. Cal. July 14, 2011) (citing *Wickland Oil*, 792 F.2d at 892 (concluding that a private party may obtain reimbursement for response costs incurred prior to lead agency approval of a cleanup program)).

75. For purposes of the MSJ, RID does not contest SOF ¶ 75.

76. For purposes of the MSJ, RID does not contest SOF ¶ 76.

77. For purposes of the MSJ, RID does not contest SOF ¶ 77. RID reiterates, however, that recovery of costs under CERCLA is not dependent upon issuance of a record of decision. *See United Alloys*, 2011 WL 2749641, at *20; *Wickland Oil*, 792 F.2d at 892.

78. For purposes of the MSJ, RID does not contest SOF ¶ 78.

79. For purposes of the MSJ, RID does not contest SOF ¶ 79.

**B.    Plaintiff's Controverting Statement of Facts**

80. The Arizona WQARF statutes and related ADEQ rules do not mandate analysis of a no-action alternative in a feasibility study. A.R.S. § 49-282.06(B)(4); A.A.C. R18-16-407(E).

81. Even under CERCLA, "alternatives that involve little or no treatment" are to be developed by the lead agency only "as appropriate." 40 CFR 300.430(e)(3).

Furthermore, the EPA recognizes that specific NCP requirements are only "potentially applicable" to response actions by private parties. *See*, 49 CFR 300.700(c)(5).

83. In this case, the no-action alternative would not meet the ADEQ's remedial objectives for the contaminant plume at the WVBA Site. *See* RID Draft FS Report, Ex. 34 to PSOF-1 [Doc. 1185-3] at 104–05.

83. Nor was a no-action strategy capable of achieving site-specific "reasonably foreseeable end uses" for the contaminated groundwater under A.R.S. § 49-282.06(B)(4)(b). (*Id.*)

84. Defendants themselves raised but then abandoned the no-action alternative in their competing FS. *See* Haley & Aldrich, Feasibility Study Report, West Van Buren WQARF Site, prepared for The West Van Buren WQARF Site Working Group (July 2014), at 23 (attached hereto as Exhibit 1).

85. Contrary to Defendants' assertion, RID did provide a very focused analysis of risk and risk reduction achieved for each of the four groundwater remedial alternatives evaluated in the FS. (PSOF-1 ¶¶ 44, 52; RID Draft FS Report, Ex. 34 to PSOF-1 [Doc. 1185-3] at §§ 7 and 8).

86. CERCLA does not define ARARS; rather, it requires that remedial actions result in a level of cleanup that at least meets the legally applicable or otherwise relevant and appropriate federal or state site-specific requirements. *Franklin County Conv. Facilities Auth. v. Am. Premier Underwriters, Inc.,* 240 F.3d 534, 543 (6th Cir. 2001).

87. Considered "as a whole," the record is clear that in fact enormous attention was given to compliance with site-specific Arizona law, precisely as confirmed by ADEQ's approval of RID's ERA and MERA pursuant to which its response costs were incurred. (PSOF-1 ¶¶ 41–42; letters from ADEQ to RID approving the ERA and MERA, respectively, Exhibits 28 and 29 to PSOF-1 [Doc. 1184-2, Doc. 1184-3]).

RESPECTFULLY SUBMITTED, October 11, 2016.

          BONNETT, FAIRBOURN, FRIEDMAN
          & BALINT, P.C.


By:   */s/Jerry C. Bonnett*
      Jerry C. Bonnett
      Andrew S. Friedman
      Francis J. Balint, Jr.
      Andrew Q. Everroad
      2325 East Camelback Road, Suite 300
      Phoenix, Arizona  85016
      *Attorneys for Plaintiff Roosevelt Irrigation District*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document filed through the ECF system on October 11, 2016, will be electronically sent to the registered participants as identified on the Notice of Electronic Filing.

Dated, October 11, 2016.

                                          */s/ Carolyn Alter*
                                        An Employee of Bonnett Fairbourn Friedman & Balint, PC