G. Van Velsor Wolf Jr. (#07530)
Michael K. Foy (#032736)
**SALMON, LEWIS, & WELDON, P.L.C.**
2850 East Camelback Road, Suite 200
Phoenix, Arizona 85016
Telephone: 602-801-9075
Facsimile: 602-801-9070
Email: vvw@slwplc.com

*Attorneys for Defendant Air Liquide
America Specialty Gases, L.L.C.*

Christopher D. Thomas (#010482)
Matthew L. Rojas (#025030)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602-351-8000
Facsimile: 602-648-7000
Email: CThomas@perkinscoie.com
Email: MLRojas@perkinscoie.com

*Attorneys for Defendant City of Phoenix*

Stephen L. Wetherell (#015353)
Phoenix City Attorney's Office
Civil Division
200 West Washington Street, Suite 1300
Phoenix, Arizona 85003-1611
Telephone: 602-262-6761
Facsimile: 602-534-2476
Email: Stephen.wetherell@phoenix.gov

*Attorneys for Defendant City of Phoenix*

Thomas Loquvam
**PINNACLE WEST CAPITAL
CORPORATION**
Post Office Box 53999 MS8695
Phoenix, Arizona 85072-3999
Telephone: 602-250-3616
Facsimile: 602-250-3393
Email: Thomas.Loquvam@pinnaclewest.com

*Attorneys for Defendant Arizona Public
Service Co.*

Mitchell J. Klein (#007430)
J. Matthew Derstine (#011448)
Timothy J. Sabo (#021309)
**SNELL & WILMER LLP**
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602-382-6000
Facsimile: 602-382-6070
Email: mjklein@swlaw.com
Email: mderstine@swlaw.com
Email: tsabo@swlaw.com

*Attorneys for Defendant Arizona Public
Service Company*

(Additional counsel listed on next pages)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Roosevelt Irrigation District, a political subdivision of the State of Arizona, | No. 2:10-CV-00290-PHX-DAE (BGM) |
| Plaintiff, | **DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RE: NCP COMPLIANCE** |
| v. | |
| Salt River Project Agricultural Improvement and Power District, et al., | —AND— |
| Defendants. | **MEMORANDUM IN SUPPORT** |

| | |
|---|---|
| Shane R. Swindle (#011738)<br>Michael P. Berman (#005861)<br>P. Derek Petersen (#025683)<br>**PERKINS COIE LLP**<br>2901 North Central Avenue, Suite 2000<br>Phoenix, Arizona 85012-2788<br>Telephone: 602-351-8000<br>Facsimile: 602-648-7000<br>Email: SSwindle@perkinscoie.com<br>Email: MBerman@perkinscoie.com<br>Email: PDPetersen@perkinscoie.com<br><br>*Attorneys for Defendant Corning Incorporated* | Troy B. Froderman (#012717)<br>Jonathan G. Brinson (#025045)<br>**POLSINELLI PC**<br>One East Washington Street, Suite 1200<br>Phoenix, Arizona 85004<br>Telephone: 602-650-2000<br>Facsimile: 602-264-7033<br>Email: tfroderman@polsinelli.com<br>Email: jbrinson@polsinelli.com<br><br>*Attorneys for Defendant Dolphin Incorporated* |
| Mitchell J. Klein (#007430)<br>**SNELL & WILMER L.L.P.**<br>400 East Van Buren Street, Suite 1900<br>Phoenix, Arizona 85004<br>Telephone: 602-382-6000<br>Facsimile: 602-382-6070<br>Email: mjklein@swlaw.com<br><br>*Attorneys for Defendant Dolphin Incorporated* | John M. Barkett (FL #197548)<br>**SHOOK, HARDY & BACON LLP**<br>201 South Biscayne Boulevard, Suite 3200<br>Miami, Florida 33131-4332<br>Telephone: 305-358-5171<br>Facsimile: 305-358-7470<br>Email: jbarkett@shb.com<br><br>*Attorneys for Defendant Freescale Semiconductor, Inc.* |
| Karen S. Gaylord (#010621)<br>**JENNINGS, HAUG & CUNNINGHAM LLP**<br>2800 North Central Avenue, Suite 1800<br>Phoenix, Arizona 85004-1049<br>Telephone: 602-234-7800<br>Facsimile: 602-277-5595<br>Email: ksg@jhc-law.com<br><br>*Attorneys for Defendant Honeywell International Inc.* | Sean Morris (*Pro Hac Vice*)<br>Eric D. Mason (*Pro Hac Vice*)<br>Sean A. McCormick (*Pro Hac Vice*)<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, California 90017-5844<br>Telephone: 213-243-4000<br>Facsimile: 213-243-4199<br>Email: sean.morris@apks.com<br>Email: eric.mason@apks.com<br>Email: sean.mccormick@apks.com<br><br>*Attorneys for Defendant Honeywell International Inc.* |
| Mitchell J. Klein (#007430)<br>Maribeth M. Klein (#023943)<br>**SNELL & WILMER L.L.P.**<br>One Arizona Center<br>400 East Van Buren Street, Suite 1900<br>Phoenix, Arizona 85004-2202<br>Telephone: 602-382-6000<br>Facsimile: 602-382-6070<br>Email: mjklein@swlaw.com<br>Email: mmklein@swlaw.com<br><br>*Attorneys for Defendant ITT Corporation* | John M. Pearce (#012300)<br>Scott K. Ames (#014943)<br>**FENNEMORE CRAIG PC**<br>2394 East Camelback Road, Suite 600<br>Phoenix, Arizona 85016-3429<br>Telephone: 602-916-5000<br>Facsimile: 602-916-5510<br>Email: jpearce@fclaw.com<br>Email: sames@fclaw.com<br><br>*Attorneys for Defendant Kinder Morgan Energy Partners, LP* |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

| | |
|---|---|
| J. Kenneth Mangum (#003077)<br>Ann Thompson Uglietta (#013696)<br>Deputy County Attorneys<br>Civil Services Division<br>Maricopa County Attorney's Office<br>222 North Central Avenue, Suite 1100<br>Phoenix, Arizona 85004<br>Telephone: 602-506-8541<br>Facsimile:  602-506-8567<br>Email: mangumk@mcao.maricopa.gov<br>Email: Uglietta@mcao.maricopa.gov<br><br>*Attorneys for Defendant Maricopa County* | Jerry D. Worsham II (#015594)<br>**THE CAVANAGH LAW FIRM, P.A.**<br>1850 North Central Avenue, Suite 2400<br>Phoenix, Arizona 85004<br>Telephone: 602-322-4040<br>Facsimile:  602-322-4105<br>Email: jworsham@cavanaghlaw.com<br><br>*Attorneys for Defendant Meritor, Inc.* |
| Christopher L. Callahan (#009635)<br>Phillip F. Fargotstein (#006679)<br>Scott K. Ames (#014943)<br>**FENNEMORE CRAIG PC**<br>2394 East Camelback Road, Suite 600<br>Phoenix, Arizona 85016-3429<br>Telephone: 602-916-5000<br>Facsimile:  602-916-5510<br>Email: ccallaha@fclaw.com<br>Email: pfargots@fclaw.com<br>Email: sames@fclaw.com<br><br>*Attorneys for Defendant Nucor Corporation* | Carla A. Consoli (#013798)<br>Stanley B. Lutz (#021195)<br>Marla Hudgens (#032295)<br>**LEWIS ROCA ROTHGERBER<br>CHRISTIE LLP**<br>201 East Washington Street, Suite 1200<br>Phoenix, Arizona 85004-2595<br>Telephone: 602-262-5311<br>Facsimile:  602-262-5747<br>Email: cconsoli@lrrc.com<br>Email: sblutz@lrrc.com<br>Email: mhudgens@lrrc.com<br><br>*Attorneys for Defendant Prudential Overall<br>Supply* |
| Matthew G. Ball (CA #208881)<br>Jason N. Haycock (CA #278983)<br>**K&L GATES, LLP**<br>Four Embarcadero Center, Suite 1200<br>San Francisco, California 94111<br>Telephone: 415-882-8200<br>Facsimile:  415-882-8220<br>Email: Matthew.ball@klgates.com<br>Email: Jason.haycock@klgates.com<br><br>*Attorneys for Defendant Reynolds Metals<br>Company* | David J. Armstrong (#017111)<br>Craig C. Hoffman (#026017)<br>Lea A. Phillips (#029006)<br>**BALLARD SPAHR LLP**<br>1 East Washington Street, Suite 2300<br>Phoenix, Arizona 85004-2555<br>Telephone: 602.798.5400<br>Facsimile:  602.798.5595<br>Email: armstrongd@ballardspahr.com<br>Email: hoffmanc@ballardspahr.com<br>Email: phillipsla@ballardspahr.com<br><br>*Attorneys for Defendant Salt River Project<br>Agricultural Improvement and Power<br>District* |

| | |
|---|---|
| Joshua Levine (CA #171840)<br>**BOOTH LLP**<br>1849 Sawtelle Boulevard, Suite 500<br>Los Angeles, California 90025<br>Telephone:  310-641-1800<br>Facsimile:  310-641-1818<br>Email: JLevine@boothllp.com<br><br>*Attorneys for Defendant Textron, Inc.* | William W. Pearson (#012845)<br>**PEARSON LAW GROUP LLC**<br>1221 East Osborn Road, Suite 101<br>Phoenix, Arizona 85014<br>Telephone: 602-237-5405<br>Facsimile:  602-688-5488<br>Email: Wink@pearsonlg.com<br><br>*Attorneys for Defendant Union Pacific Railroad Company* |
| Michelle Ulick Rosenthal (WSBA #35439)<br>Gregory T. Hixson (WSBA #39223)<br>Denver R. Gant (WSBA #38552)<br>Attorneys *Pro Hac Vice*<br>**VERIS LAW GROUP PLLC**<br>1809 Seventh Avenue, Suite 1400<br>Seattle, Washington 98101<br>Telephone: 206-829-9590<br>Facsimile: 206-829-9245<br>Email: Michelle@verislawgroup.com<br>Email: Greg@verislawgroup.com<br>Email: Denver@verislawgroup.com<br><br>*Attorneys for Defendant Univar USA Inc.* | |

# TABLE OF CONTENTS

Page

MOTION ...................................................................................................... 1

MEMORANDUM IN SUPPORT ...................................................................... 2

Argument ...................................................................................................... 2

    I.    It Is Error To Require Defendants To Disprove RID Complied With The NCP ..................................................................................... 2

    II.   Substantial Evidence In The Record Creates A Disputed Issue Of Material Fact Regarding Whether RID Substantially Complied With The NCP's Cost-Effectiveness Requirement ..................................... 3

    III.   The Record Also Reflects Disputed Issues of Material Fact Regarding Other Elements of NCP Compliance, Precluding Summary Judgment in Favor of RID Once The Proper Burden Is Applied ......................... 8

Conclusion .................................................................................................. 11

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

1

# TABLE OF AUTHORITIES

**Page(s)**

2

3

## CASES

4

*In re Bell Petroleum Servs.*,
   3 F.3d 689 (5th Cir. 1993) ........................................................................................... 7

5

6

*Carson Harbor Vill. v. Cty. of Los Angeles*,
   433 F.3d 1260 (9th Cir. 2006) ................................................................................. 3, 6

7

*Franklin Co. Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*,
   240 F.3d 534 (6th Cir. 2000) .................................................................................... 10

8

9

*Hydranautics v. FilmTec Corp.*,
   306 F. Supp. 2d 958 (S.D. Cal. 2003) ........................................................................ 1

10

*Louisiana-Pac. Corp. v. ASARCO Inc.*,
   6 F.3d 1332 (9th Cir. 1993) ........................................................................................ 9

11

12

*Minnesota v. Kalman W. Abrams Metals, Inc.*,
   155 F.3d 1019 (8th Cir. 2015) ................................................................................. 2, 3

13

14

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ................................................................................... 2, 8

15

*Pentair Thermal Mgmt., LLC v. Rowe Indus., Inc.*,
   2013 WL 1320422 (N.D. Cal. Mar. 31, 2013) ........................................................... 3

16

17

*Sealy Connecticut, Inc. v. Litton Industries, Inc.*,
   93 F. Supp. 2d 177 (D. Conn. 2000) ........................................................................ 10

18

19

*Southfund Partners III v. Sears Roebuck and Co.*,
   57 F. Supp. 2d 1369 (N.D. Ga. 1999) ........................................................................ 3

20

*Union Pacific R.R. v. Reilly Indus.*,
   215 F.3d 830 (8th Cir. 2000) ...................................................................................... 9

21

22

*United States v. Burlington N. R.R. Co.*,
   200 F.3d 679 (10th Cir. 1999) ................................................................................. 2, 3

23

24

*Wash. State Dep't of Transp. v. Wash. Nat. Gas Co.* (*WSDOT*),
   59 F.3d 793 (9th Cir. 1995) ..................................................................................... 2, 3

25

## STATUTES, RULES AND REGULATIONS

26

40 C.F.R. § 300.430(d)(4) .......................................................................................... 10

27

40 C.F.R. § 300.430(e)(6) ............................................................................................ 9

28

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

40 C.F.R. § 300.430(e)(7) .................................................................................................... 3

40 C.F.R. § 300.430(f)(1)(ii)(D) ........................................................................................... 3

40 C.F.R. § 300.700(c)(3)(i) ................................................................................................. 2

AZ Admin. Code R18-16-407 ............................................................................................... 7

AZ Rev'd Stats. 49-287.03 ................................................................................................... 7

Fed. R. Civ. P. 56 ................................................................................................................. 8

LR.Civ. 7.2(g)(1) .................................................................................................................. 1

## MOTION

Defendants[1] respectfully move for reconsideration of that portion of the Court's March 15, 2017 Order (ECF No. 1396) (the "Order") granting Plaintiff Roosevelt Irrigation District's ("RID") cross-motion for partial summary judgment re: NCP Compliance (ECF No. 1361).

Although a court will "ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence," (L.R.Civ. 7.2(g)(1)), a "district court may reconsider and revise a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law." *Hydranautics v. FilmTec Corp.,* 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003).

Here, the Order reflects manifest error within the meaning of L.R.Civ. 7.2(g)(1) for two important reasons.  First, it appears that the Order applied the wrong burden of proof in ruling on RID's motion for partial summary judgment.  Second, and in any event, the Order ignores substantial evidence creating a genuine issue of material fact that precludes judgment in favor of RID regarding consistency with the National Contingency Plan.

This motion for reconsideration is based on this Motion, the accompanying Memorandum in Support with exhibits, as well as the record submitted in connection with Defendants' Motion for Summary Judgment Re: NCP Compliance (ECF No. 1320) and Plaintiff's cross-motion.

---

[1] As used in this Motion and supporting memorandum, "Defendants" refers to the following parties on whose behalf this Motion for Reconsideration is filed:  Air Liquide America Specialty Gases, L.L.C.; Arizona Public Service Company; City of Phoenix; Corning Incorporated; Dolphin Incorporated; Freescale Semiconductor, Inc.; Honeywell International Inc.; ITT Corporation; Kinder Morgan Energy Partners, LP; Maricopa County; Meritor, Inc.; Nucor Corporation; Prudential Overall Supply; Reynolds Metals Company; Salt River Project Agricultural Improvement and Power District; Textron, Inc.; Union Pacific Railroad Company; and Univar USA Inc.

**MEMORANDUM IN SUPPORT**

<u>Argument</u>

**I. It Is Error To Require Defendants To Disprove RID Complied With The NCP**

The Order relies on cases involving government Section 107(a)<u>(4)(A)</u> claims, not Section 107(b)<u>(4)(B)</u>. *See, e.g.*, Order at 23 ("[T]he Court finds that any proof that RID's remedial actions were inconsistent with the NCP 'is not a complete defense to liability for the cost of remediating a site.'" (quoting *United States v. Burlington N. R.R. Co.,* 200 F.3d 679, 695 (10th Cir. 1999))). However, these cases, including *Burlington Northern Railroad Company* and *Minnesota v. Kalman W. Abrams Metals, Inc.*, 155 F.3d 1019 (8th Cir. 1998), do not properly state the burden of proof RID faces to succeed on its claim.

There is a difference between the burden of proof applicable to cost recovery claims brought by federal or state regulators (or Indian tribes) under Section 107(a)(4)(A) of CERCLA, and to claims brought under Section 107(a)(4)(B), which governs claims by entities like RID. The distinction is critical. If this were a (4)(A) action brought by the government, such a plaintiff would be permitted to recover "all costs of removal or remedial action . . . not inconsistent with the [NCP]" and, making matters even easier, "consistency with the NCP is <u>presumed</u>" in such cases. *Wash. State Dep't of Transp. v. Wash. Nat. Gas Co.* (*WSDOT*), 59 F.3d 793, 799-800 (9th Cir. 1995) (emphasis added) (internal quotation marks omitted).

In an action like this one brought under Section 107(a)(4)(B), however, it is the plaintiff's burden to affirmatively prove "that its actions are consistent with the NCP" and that it has incurred NCP-consistent costs in implementing those actions. *Id.* at 800. For purposes of its cross-motion for partial summary judgment, this means that RID was required to demonstrate the absence of any genuine issue of material fact regarding its development and implementation of a "CERCLA-quality cleanup" (40 C.F.R. § 300.700(c)(3)(i)) consistent with the NCP, with "all justifiable inferences [] to be drawn in [Defendants'] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010); *see*

2

1   *also Carson Harbor Vill. v. Cty. of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006)

2   ("Private parties have the burden of proving that cleanup costs associated with remedial

3   actions are consistent with the National Contingency Plan to recover those cleanup costs

4   under CERCLA."). RID's proof fell well short of this standard.[2]

**II.    Substantial Evidence In The Record Creates A Disputed Issue Of Material Fact Regarding Whether RID Substantially Complied With The NCP's Cost-Effectiveness Requirement**

7   The Order states that RID "produced evidence that it did, in fact, *consider* cost-

8   effectiveness when considering remedial action." Order at 39 (emphasis added). The Order

9   then cites to that portion of the NCP establishing the requirement that a party "consider"

10  cost-effectiveness, but not the further requirement that a remedial action actually "shall be

11  cost-effective." *Compare* Order at 40 (citing 40 C.F.R. § 300.430(e)(7)), *with* 40 C.F.R. §

12  300.430(f)(1)(ii)(D) ("[e]ach remedial action selected shall be cost-effective"); *see also*

13  *Carson Harbor*, 433 F.3d at 1265 (the NCP is "'designed to make the party seeking

14  response costs choose a cost-effective course of action to protect public health and the

15  environment'" (quoting *WSDOT*, 59 F.3d at 802)); *Southfund Partners III v. Sears, Roebuck*

16  *& Co.*, 57 F. Supp. 2d 1369, 1381 (N.D. Ga. 1999) ("To be consistent with the NCP, all

17  remedial actions undertaken must be cost-effective.").

18  There is voluminous evidence in the record demonstrating a genuine dispute as to

_____

[2] In this context, the Order also states that the Ninth Circuit has not resolved the issue addressed by the Eighth Circuit in *Kalman* and the Tenth Circuit in *Burlington Northern* regarding "costs versus action." Order at 22. The Ninth Circuit did address this topic in *WSDOT* when it explained the difference between a (4)(A) claim by a government and a (4)(B) claim by a private party. It is only in the former situation involving a governmental actor that an "inconsistent action" can still result in recovery of costs that the EPA or a State would have had to spend anyway. In a private party situation, recovery is barred. *See WSDOT*, 59 F.3d at 799-800. In *Pentair Thermal Management, LLC v. Rowe Industries, Inc.*, also cited in the Court's Order, there was a cleanup of soils after a Feasibility Study was prepared that identified three alternatives. 2013 WL 1320422, at *10 (N.D. Cal. Mar. 31, 2013). Defendant argued that additional remedial costs that were encountered required re-notice to the public and an opportunity for public comment. The district court rejected that argument. *Id.* at *20. The district court in *dicta* then went on to refer to *Burlington Northern* and *Kalman* to say that even if there had been a fundamental change, such inconsistency with the NCP would not eliminate plaintiff's costs which were NCP compliant. *Id.* at *20-21. Under (4)(A), this would be correct; under (4)(B) it is not.

whether RID complied with the NCP's mandate both that a party "consider" cost-effectiveness and that remedial action "shall be cost-effective."   For example:

| Attached Exh. # | Record Demonstrating Substantial Fact Disputes on Cost-Effectiveness | Record Location |
|---|---|---|
| 1 | The remedy proposed by RID consists of treating water coming out of its wells to drinking water standards, and then dumping that water back into its canal system to mix with sewer water to be used for irrigation purposes. | DSOF[3] (ECF No. 1321) ¶ 6, 51. |
| 2 | RID decided on this action of using its existing irrigation infrastructure to immediately begin treating groundwater to drinking water standards before undertaking any technical analysis; and even later, the only remediation approach RID considered was immediate and active treatment to drinking water standards. | DSOF (ECF No. 1321) ¶¶ 9, 22.  DCSOF[4] (ECF No. 1365) ¶ 1. |
| 3 | RID is an irrigation district and does not provide drinking water. | DSOF (ECF No. 1321) ¶ 3. |
| 4 | Even untreated, the water that comes out of RID's wells is suitable for its current irrigation use. | DSOF (ECF No. 1321) ¶ 10. |
| 5 | Groundwater pumped by RID's irrigation wells is discharged into its Main Canal or the linked Salt Canal before being delivered to West Valley irrigation customers.  The Main Canal also receives treated sewage effluent from the City of Phoenix's 23rd Avenue wastewater plant.  It thus would be illegal under current Arizona law for the RID canals to be used to convey drinking water. | DSOF (ECF No. 1321) ¶¶ 5-7. |

---

[3] Defendants' Statement of Facts in Support of Motion for Summary Judgment Re: NCP Compliance.

[4] Defendants' Controverting Statement of Facts in Opposition to Plaintiff's Cross-Motion for Summary Judgment Re: NCP Compliance.

4

| 6 | RID began implementing its water treatment project in 2011 by installing wellhead treatment at four of its irrigation wells; when the wellhead treatment units on these wells are operated, the pumped groundwater is treated to drinking water standards and then, just like when the treatment units are not on, dumped into the Main Canal to mix with sewage effluent. | DSOF (ECF No. 1321) ¶ 6.<br><br>DCSOF (ECF No. 1365) ¶ 23. |
|---|---|---|
| 7 | In 2014, the cost of treating these wells was approximately $1.9 million and RID's consultant has proposed a long-term wellhead remedy with a net present value of $63.67 million, driven primarily by estimated annual operation and maintenance costs of $2,049,500. | DCSOF (ECF No. 1365) ¶ 26. |
| 8 | Although RID's remedy calls for immediate treatment to drinking water standards of its irrigation water, it proposes no action to restore the aquifer itself or to address impacted wells owned by others such as the City of Phoenix and Salt River Project.  The City of Phoenix currently supplies drinking water to 1.4 million people, while RID supplies drinking water to none. | DSOF (ECF No. 1321) ¶ 73.<br><br>DCSOF (ECF No. 1365) ¶¶ 13-14. |
| 9 | A group of parties known as the West Van Buren Working Group — which includes the City of Phoenix — also completed a feasibility study calling for drinking water standards to be the long-term treatment goals for the site, but deferring active treatment to those standards to the time when there is actual drinking water use of the treated water. | ECF No. 1329-1 |
| 10 | Joel Peterson of Synergy, the RID consultant who designed the RID remedy, does not believe the Working Group approach to defer active treatment is unreasonable.<br><br>RID's own cost estimate is that annual operation and maintenance costs for immediate treatment to drinking water is $2,049,500, which are monies that would not be spent under the Working Group approach until a remedy was actually needed. | DCSOF (ECF No. 1365) ¶¶ 26, 25. |
| 11 | On January 8, 2015, the Arizona Department of Health Services released a health consultation that evaluated whether impacted groundwater in the RID canals, if not treated, would pose a health risk. The agency concluded that it would not pose a health risk, unless and until the water is actually used for drinking. | DSOF (ECF No. 1321) ¶ 67. |

DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY
JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT

| 12 | On July 28, 2015, ADEQ consultant Matrix-CALIBRE evaluated the feasibility studies submitted by RID and the Working Group.  Matrix concluded that there was no current risk requiring immediate treatment of pumped groundwater to drinking water standards. | DSOF (ECF No. 1321) ¶ 68. |
|----|---|---|
| 13 | Even though RID does not provide drinking water, in 2012, ADEQ contractor Terranext completed a remedial investigation which concluded that untreated water in the RID Main Canal complies with drinking water standards for volatile organic compounds within 125 feet of the point of discharge. | DSOF (ECF No. 1321) ¶ 12. |
| 14 | ADEQ has not selected a final remedy for the site and has not picked between RID's proposed approach to immediately treat irrigation water to drinking water standards and the alternate Working Group proposal of avoiding those costs until there is a change in end use. | DSOF (ECF No. 1321) ¶¶ 74-79. |

It cannot be cost-effective (a) to treat water at a few wells — at significant cost[5] — and then discharge that water back into canals so that it can mix with sewer water; (b) to immediately treat water when there is no health risk for its current use; (c) to treat such water that is perfectly acceptable for irrigation purposes in the first place; and (d) to implement wellhead treatment that does nothing to address the water that remains in the aquifer (since the same amount of VOCs are removed from the aquifer simply through RID's normal operations without treatment).

Indeed, the cost-effectiveness of RID's proposed remedy is particularly called into doubt since immediate treatment to drinking water standards was the only remedial option considered by RID,[6] and a subset of Defendants, including water providers City of Phoenix

---

[5] Defendants dispute that RID itself has incurred any such costs.  *See* ECF No. 1394. Accordingly, even if the focus of the inquiry on summary judgment were "costs" instead of "actions," RID's motion should have been denied.  The Court's March 14, 2017 Order regarding costs held that there were questions of fact as to whether RID had incurred any costs and identified only limited categories of cost that were potentially still at issue.  *See, e.g.*, ECF No. 1394 at 26.  RID did not mention any of those specific costs in its cross-motion, and made no attempt to prove that those potentially incurred costs were consistent with the NCP.

[6] *See Carson Harbor*, 433 F.3d at 1268 ("[D]iscussing a single remediation alternative does not establish substantial compliance with the feasibility study requirements of the National

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

1   and Salt River Project, known as the "Working Group," completed a Feasibility Study that

2   would avoid expending millions of dollars by deferring treatment of pumped groundwater

3   to drinking water standards until there was a need to do so.[7]  *See* ECF No. 1329-1.  At a

4   minimum, this evidence demonstrates genuine disputes of material fact on cost-

5   effectiveness.

6        An earlier part of the Order quotes RID's counsel's statements at oral argument that

7   during the remedy selection process "participating defendants 'could have said wait,'

8   '[t]hat's not a cost-effective remedy,'" but that no one had done so.  Order at 30 n.8.  The

9   Order indicates that it took those comments by RID's counsel to mean that no one had

10  raised cost-effectiveness over the years.  *Id.* at 30.  That is not correct.  As the record

11  demonstrates, Defendants repeatedly disputed the cost-effectiveness of RID's remedy,

12  culminating in the Working Group submitting their competing Feasibility Study.  Indeed,

13  RID highlighted this in its brief, noting that Defendants "simultaneously and vociferously

14  advocated other responses as more cost-effective" throughout the ADEQ process.  Pl.'s

15  Reply in Supp. of Cross-Mot. for Partial Summ. J. (ECF No. 1368), 5:16-17.

16       To the extent the Order is based on ADEQ's "approval" of RID's Feasibility Study

17  as evidence of ADEQ's blessing of the substantive appropriateness of the remedy, that is

18  not accurate.  ADEQ  also "approved" — in exactly the same manner and to exactly the

19  same extent — Defendants' competing Feasibility Study.  More specifically, on the very

20  same day (April 15, 2015), ADEQ approved both RID's Feasibility Study and the

21  Feasibility Study submitted by the Defendant Working Group — even though the two

22

23

---

Footnote continued from previous page

24  Contingency Plan."); *see also In re Bell Petroleum Servs., Inc.*, 3 F.3d 889, 906 (5th Cir. 1993) (in the context of a Section 107(a)(4)(A) case, the EPA's decision to install a drinking water system no one used is "arbitrary and capricious" and "a waste of money").

26  [7] Joel Peterson of Synergy, the RID consultant who designed the RID remedy, testified that the Working Group's approach of deferring action unless it became necessary was not unreasonable.  Deferral would save approximately $2 million per year, according to RID's own cost estimates.  *See* Exh. 10 at 1-4 (DCSOF (ECF No. 1365) ¶ 26).

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

1  studies proposed different remedies at very different costs.[8]  *See* DSOF (ECF No. 1321) ¶¶

2  77,79.

3          ADEQ's approval of both competing Feasibility Study reports was <u>only</u> a

4  determination that they both complied with Arizona administrative procedural requirements;

5  it did not indicate an endorsement of a particular remedy.  Indeed, ADEQ has not chosen

6  either the remedy proposed by RID in its Feasibility Study, or the remedy proposed by the

7  Working Group.  *See* DSOF (ECF No. 1321) ¶¶ 73-79 (paragraphs explaining that "ADEQ

8  Has Never Approved A Remedial Action for the WVB Site").

9          This record establishes that RID has not demonstrated that there is an "absence of

10  evidence to support" Defendant's position that RID's remedy is not cost-effective, as is its

11  burden under Rule 56 and the NCP.  *In re Oracle Corp.*, 627 F.3d at 387.[9]

12  **III.   The Record Also Reflects Disputed Issues of Material Fact Regarding Other**
       **Elements of NCP Compliance, Precluding Summary Judgment in Favor of**
13     **RID Once The Proper Burden Is Applied**

14          The record likewise contains numerous disputed material facts regarding other

15  elements of NCP compliance as to which RID bears the burden of proof on its cross-motion.

16  The Order itself noted that "Defendants have raised some legitimate concerns over whether

17  RID substantially complied with key components of the NCP."  Order at 42.  When the

18  correct burden of proof is applied, these "legitimate concerns" preclude summary judgment

19  in RID's favor.

20          Defendants' motion addressed, among other things, RID's failure to comply with the

21  

22  _____
    [8] Both "approval" letters use the exact same sentence: "ADEQ has determined that the FS
    Report meets the requirements of Arizona Revised Statutes 49-287.03 and Arizona
23  Administrative Code R18-16-407 and therefore ADEQ is approving [the submitted] FS
    Report." Exh. 14 at 8-9, 13-14 (DSOF (ECF No. 1321) ¶¶ 77, 79).

24  [9] As the Order recognizes, by their motion, Defendants challenged only whether RID can
    demonstrate that it has incurred response costs in a manner "*consistent with the NCP.*"
25  Order at 13 (emphasis in original) (noting that the necessity of any such actions or costs, as
    well as the other elements of a CERCLA claim, were <u>not</u> at issue in the motion).  RID's
    cross-motion sought a determination in its favor only on this same narrow issue.  *Id.* at 38.
26  Thus, if it becomes necessary to do so, Defendants will, at the proper time, show that the
    circumstances discussed herein (and others) demonstrate that RID's response costs, even if
27  any were "incurred," are not "necessary" — a separate requirement in addition to NCP
    consistency.

28  

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY
JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

NCP's requirements to conduct a proper health risk assessment, to evaluate remedial alternatives (including the no-action alternative), to fully evaluate applicable or relevant and appropriate requirements ("ARARs"), and to demonstrate there was meaningful public participation before selecting a final remedy.  The Order found that RID had raised genuine issues of material fact precluding Defendants from prevailing on their motion for summary judgment, and Defendants do not seek reconsideration of that ruling.  The Order found that RID had produced "sufficient evidence to overcome summary judgment because it suggests that RID satisfied its obligations to meet ARARs" (*id.* at 36) and "has produced sufficient evidence to overcome summary judgment as to whether it complied with the human health risk assessment requirements" (*id.* at 37).

The Order erroneously concludes that the same contested evidentiary record that required denial of Defendants' motion justified granting of RID's cross-motion. The Order could only have done so by wrongly placing on Defendants the burden of demonstrating that RID's actions and costs were inconsistent with the NCP.  In addition to the facts cited in support of Defendants' motion, the substantial controverting evidence in the record that precludes granting of the cross-motion includes:

***Public Participation.***   As the record reflects, RID selected its remedy before conducting a proper NCP analysis.  The 2009 Implementation Plan so states (DSOF (ECF No. 1321) ¶¶ 23-26), Mr. Peterson affirmed this fact, and RID even implemented its water treatment project by February 2012, which was before the Remedial Investigation Report or a Feasibility Study was completed (DCSOF (ECF No. 1365) ¶ 23; Exh. 6 at 9 (Shirley Dep., 826:18-22)).  This evidence would allow a reasonable trier-of-fact to conclude that RID did not substantially comply with the NCP.[10]   Material fact disputes thus exist regarding

---

[10] *See, e.g.*, *Union Pac. R.R. Co. v. Reilly Indus., Inc.*, 215 F.3d 830, 835-39 (8th Cir. 2000) (affirming summary judgment for defendant where "the selection of the thermal desorption remedy was — for purposes of allowing meaningful public participation and comment — a foregone conclusion prior to the meeting on August 1, 1994"); *cf. Louisiana-Pac. Corp. v. ASARCO Inc.*, 6 F.3d 1332, 1342 (9th Cir. 1993) (affirming judgment where district court's finding that remedy was selected after the public participation process and not before was not clearly erroneous), *superseded on other grounds*, 24 F.3d 1565 (9th Cir. 1994).

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

1    whether RID satisfied the NCP requirement of obtaining meaningful public participation.

2        ***Development of the No-Action Remedy***.   There is no dispute that RID failed to

3    comply with the express requirement of the NCP (40 C.F.R. § 300.430(e)(6)) that the no-

4    action alternative be developed.   Order at 29.   By placing the burden of proof on Defendants

5    instead of RID, as if this was a (4)(A) instead of a (4)(B) case, the Order excused RID from

6    the consequences of this failure.[11]   Thus, material fact disputes also exist regarding whether

7    RID satisfied the NCP requirement for developing a no-action alternative.[12]

8        ***ARARs***.   RID selected immediate treatment to drinking water standards as its remedy

9    before completing any technical evaluation.   *See* DSOF (ECF No. 1321) ¶¶ 22-26.

10   Moreover, RID's Implementation Plan, ERA, MERA, or Revised Draft Feasibility Study do

11   not identify any federal ARARs.[13]   *Id.*, ¶¶ 21, 32, 40, 54.   With respect to State ARARs, as

12   noted above in the testimony of RID's consultants, the undisputed record is that treatment is

13   not required under Arizona law to satisfy State standards for surface water.[14]   Thus again,

14

15   [11] *Sealy Connecticut, Inc. v. Litton Industries, Inc.*, 93 F. Supp. 2d 177 (D. Conn. 2000)
16   does not save RID from its burden of proof on this issue.   In *Sealy*, the question was
     whether to excavate contaminated soils or to cap them.   *Both* alternatives were considered
17   in the Remedial Action Work Plan, and the no action alternative was expressly developed
     and rejected by the state environmental agency.   *Id.* at 182-183.   Unlike here, the remedy in
18   *Sealy* was selected only at the end of the process, as mandated by the NCP.

     [12] RID's selection of a remedy before submitting it to public comment was the basis of
19   Defendants' contention that RID has not satisfied the public participation requirement. *See*
     February 28, 2017 Tr. (ECF No. 1397) at 17-18 ("The public was viewing a remedy that
20   had been proposed by RID from the get-go before this process even was followed through.
     And so the public was viewing a proposed remedy to decide even before a risk investigation,
21   before a risk assessment, before a feasibility study.").

     [13] Defendants provided a list of ARARs to be considered as Exhibit B to ECF No. 1362-1.
22
     [14] *Franklin County Convention Facilities Authority v. American Premier Underwriters,*
23   *Inc.*, 240 F.3d 534 (6th Cir. 2000) (cited in the Order at 36) does not support a finding in
     favor of RID.   *Franklin* involved the removal of chemicals in connection with construction
24   plans for a convention facility.   The successor to the former operator sought to avoid
     paying for the costs of remediating the mixture, arguing, in part, a failure to consider
25   ARARs.   The Ohio EPA was significantly involved to the point of preparing a "report
     outlining the dangers presented to the human and natural environment," and EPA was also
26   involved, suggesting to the court that plaintiff "satisfied its obligation to meet ARARs."
     *Id.* at 544.   Here, the ADEQ disclaimed any analysis or approval "of the transport or final
27   disposition and use of the treated water" and RID's consultants admitted that the
     groundwater untreated met water quality standards for agricultural application (DSOF
28   (ECF No. 1321) ¶¶ 10-11) but RID treats the water anyway to drinking water standards.

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY**
**JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

1  material fact disputes exist whether RID satisfied the NCP requirement for applying

2  ARARs.

3      ***Risk Assessment.*** RID failed to follow the risk assessment requirement of the NCP

4  (40 C.F.R. § 300.430(d)(4)) in preselecting and then implementing its remedy even before

5  completion of a feasibility study.  It eschewed its own consultant's public health

6  assessment, a CERCLA-compliant risk assessment by Working Group consultant Haley &

7  Aldrich, and a January 2015 Health Consultation by ADHS that there is no current risk to

8  public health that requires immediate treatment of irrigation water to drinking water

9  standards.  ADEQ's contractor, Matrix-CALIBRE, confirmed this fact.  *Id.*, ¶¶ 67-68, 71-

10  72, 60-66.  Yet again, material fact disputes exist as to whether RID satisfied the NCP

11  requirement for conducting a risk assessment.

**Conclusion**

13      For the foregoing reasons, Defendants request that the Court reconsider its previous

14  Order and deny RID's cross-motion for partial summary judgment.

17  Dated:  March 29, 2017

18                                      Respectfully submitted,

19                                      **SALMON, LEWIS, & WELDON, P.L.C.**

21                                      By: s/ G. Van Velsor Wolf Jr.
22                                            G. Van Velsor Wolf Jr.
                                           2850 East Camelback Road, Suite 200
23                                            Phoenix, Arizona 85016

24                                      *Attorneys for Defendant Air Liquide America*
                                       *Specialty Gases, L.L.C.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SNELL & WILMER L.L.P.**

By: s/  Mitchell J. Klein
     Mitchell J. Klein
     400 East Van Buren Street, Suite 1900
     Phoenix, Arizona 85004

*Attorneys for Defendants Arizona Public
Service Company, Dolphin Incorporated, and
ITT Corporation*

**PERKINS COIE LLP**

By: s/  Christopher D. Thomas
     Christopher D. Thomas
     Matthew L. Rojas
     2901 North Central Avenue, Suite 2000
     Phoenix, Arizona 85012-2788

     Stephen L. Wetherell
     Phoenix City Attorney's Office
     Civil Division
     200 West Washington Street, Suite 1300
     Phoenix, Arizona 85003-1611

*Attorneys for Defendant City of Phoenix*

**PERKINS COIE LLP**

By: s/  Michael P. Berman
     Shane R. Swindle
     Michael P. Berman
     P. Derek Petersen
     2901 North Central Avenue, Suite 2000
     Phoenix, Arizona  85012-2788

*Attorneys for Defendant Corning Incorporated*

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY
JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

**POLSINELLI PC**


By: s/ Troy B. Froderman
    Troy B. Froderman
    Jonathan G. Brinson
    One East Washington Street, Suite 1200
    Phoenix, Arizona 85004

    Mitchell J. Klein
    **SNELL & WILMER L.L.P.**
    400 East Van Buren St., Suite 1900
    Phoenix, Arizona 85004

*Attorneys for Defendant Dolphin Incorporated*

**SHOOK, HARDY & BACON LLP**


By: s/ John M. Barkett
    John M. Barkett
    Suite 3200
    201 South Biscayne Boulevard
    Miami, Florida 33131-4332

*Attorneys for Defendant Freescale Semiconductor, Inc.*

**JENNINGS, HAUG & CUNNINGHAM LLP**


By: s/ Karen S. Gaylord
    Karen S. Gaylord
    2800 North Central Avenue, Suite 1800
    Phoenix, Arizona 85004-1049

    Sean Morris (*Pro Hac Vice*)
    Eric D. Mason (*Pro Hac Vice*)
    Sean A. McCormick (*Pro Hac Vice*)
    **ARNOLD & PORTER KAYE SCHOLER LLP**
    777 South Figueroa Street, 44th Floor
    Los Angeles, California 90017-5844

*Attorneys for Defendant Honeywell*

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

**FENNEMORE CRAIG PC**


By: s/  Scott K. Ames
  John M. Pearce
  Scott K. Ames
  2394 East Camelback Road, Suite 600
  Phoenix, Arizona 85016-3429

*Attorneys for Defendant Kinder Morgan*
*Energy Partners, LP*

**WILLIAM G. MONTGOMERY**
**MARICOPA COUNTY ATTORNEY**


By: s/  Ann Thompson Uglietta
  Ann Thompson Uglietta
  J. Kenneth Mangum
  Deputy County Attorneys
  Civil Services Division
  222 North Central Avenue, Suite 1100
  Phoenix, Arizona 85004

*Attorneys for Defendant Maricopa County*

**THE CAVANAGH LAW FIRM, P.A.**


By: s/  Jerry D. Worsham II
  Jerry D. Worsham II
  1850 North Central Avenue, Suite 2400
  Phoenix, Arizona 85004

*Attorneys for Defendant Meritor, Inc.*

**FENNEMORE CRAIG PC**


By: s/  Scott K. Ames
  Christopher L. Callahan
  Phillip F. Fargotstein
  Scott K. Ames
  2394 East Camelback Road, Suite 600
  Phoenix, Arizona 85016-3429

*Attorneys for Defendant Nucor Corporation*

14

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY**
**JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

**LEWIS ROCA ROTHGERBER LLP**

By: s/  Stanley B. Lutz
      Carla A. Consoli
      Stanley B. Lutz
      Marla Hudgens
      201 East Washington Street, Suite 1200
      Phoenix, Arizona 85004-2595

*Attorneys for Defendant Prudential Overall Supply*

**K&L GATES, LLP**

By: s/  Matthew G. Ball
      Matthew G. Ball
      Jason N. Haycock
      Four Embarcadero Center, Suite 1200
      San Francisco, California 94111

*Attorneys for Defendant Reynolds Metals Company*

**BALLARD SPAHR LLP**

By: s/  David J. Armstrong
      David J. Armstrong
      Craig C. Hoffman
      Lea A. Phillips
      1 East Washington Street, Suite 2300
      Phoenix, Arizona 85004-2555

*Attorneys for Defendant Salt River Project Agricultural Improvement and Power District*

**BOOTH LLP**

By: s/  Joshua Levine
      Joshua Levine
      1849 Sawtelle Boulevard, Suite 500
      Los Angeles, California 90025

*Attorneys for Defendant Textron, Inc.*

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PEARSON LAW GROUP LLC**


By: s/ William W. Pearson
    William W. Pearson
    1221 East Osborn Road, Suite 101
    Phoenix, Arizona 85014

*Attorneys for Defendant Union Pacific*
*Railroad Company*

**VERIS LAW GROUP PLLC**


By: s/ Michelle Rosenthal
    Michelle U. Rosenthal
    Gregory T. Hixson
    Denver R. Gant
    1809 Seventh Avenue, Suite 1400
    Seattle, Washington 98101

*Attorneys for Defendant Univar USA Inc.*

**DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING SUMMARY
JUDGMENT RE: NCP COMPLIANCE AND MEMORANDUM IN SUPPORT**

**CERTIFICATE OF SERVICE**

☒      I hereby certify that on March 29, 2017, I electronically transmitted the attached documents to the Clerk's Office and to the counsel of record who are CM/ECF registrants using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

☒      I hereby certify that on March 29, 2017, I served the attached document by first class mail by placing the sealed envelope for collection and processing correspondence for mailing in our ordinary business practices with the U.S. Postal Service addressed as follows:

> Honorable David A. Ezra
> United States District Court
> John H. Wood, Jr. United States Courthouse
> 655 East Cesar E. Chavez Blvd., 3rd Floor
> San Antonio, Texas  78206

☒      I hereby certify that on March 29, 2017, I served the attached document by first class mail on the following, who is not a registered participant of the CM/ECF System, by placing the sealed envelope for collection and processing correspondence for mailing in our ordinary business practices with the U.S. Postal Service addressed as follows:

> Walker Power Systems, Inc.
> c/o Jeffrey R. Conover
> 1301 East Jackson Street
> Phoenix, Arizona 85034

*Pro Se*

                                      s/ Gloria Turner

---

17