IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| ROOSEVELT IRRIGATION DISTRICT, a political subdivision of the State of Arizona, | § § § § | NO. 2:10-CV-00290 DAE-BGM |
| Plaintiff, | § | |
| vs. | § § | |
| SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, et al., | § § § § | |
| Defendants. | § § | |
| _____ | § | |

ORDER DENYING MOTION FOR RECONSIDERATION

The matter before the Court is Defendants Air Liquide America

Specialty Gases, L.L.C. ("Air Liquide"), Arizona Public Service Company ("AZ

Public Service"), City of Phoenix, Corning Inc.("Corning"), Dolphin Inc.

("Dolphin"), Freescale Semiconductor, Inc. ("Freescale"), Honeywell

International, Inc. ("Honeywell"), ITT Corporation ("ITT"), Kinder Morgan

Energy Partners, LP ("Kinder Morgan"), Maricopa County, Meritor, Inc.

("Meritor"), Nucor Corporation ("Nucor"), Prudential Overall Supply

("Prudential"), Reynolds Metals Company ("Reynolds"), Salt River Agricultural

Improvement and Power District ("Salt River"), Textron, Inc. ("Textron"), Union

Pacific Railroad Company ("Union Pacific"), and Univar USA Inc. ("Univar")

(collectively, "Defendants") Motion for Reconsideration of Court's Order Granting Plaintiff's Cross-Motion for Partial Summary Judgment Re: NCP Compliance. (Dkt. # 1402.)  The Court finds this matter suitable for disposition without a hearing.

After careful consideration of the memoranda in support of and in opposition to the motion, the Court, for the reasons that follow, **DENIES** the motion for reconsideration.

<u>BACKGROUND</u>

The underlying factual and procedural background of this case are detailed in the Court's Order Granting Plaintiff Roosevelt Irrigation District's ("RID") Cross-Motion for Summary Judgment Re: NCP Compliance.  (Dkt. # 1396.)  In that Order issued on March 15, 2017, the Court granted summary judgment in favor of RID, finding that there was no genuine issue of material fact that RID substantially complied with applicable requirements set forth in the National Contingency Plan ("NCP").  (<u>Id.</u>)

On March 29, 2017, Defendants filed the instant motion for reconsideration of the Court's Order.  (Dkt. # 1402.)  RID filed a response in opposition on April 13, 2017 (Dkt. # 1406); Defendants filed a reply on April 20, 2017 (Dkt. # 1407).

APPLICABLE LAW

Under the "law of the case doctrine," courts do not "reexamine an issue previously decided by the same or higher court in the same case." Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc., 275 F.3d 762, 766 (9th Cir. 2001). A court may have discretion to depart from the law of the case and reexamine an issue where: (1) the first decision was clearly erroneous; (2) there has been an intervening change of law; (3) the evidence is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997). A district court abuses its discretion when it departs from the doctrine of the law of the case without one of these five requisite conditions. Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993). A motion for reconsideration may not be used to ask the Court "to rethink what the court had already thought through—rightly or wrongly." See Defenders of Wildlife v. Ballard, 73 F. Supp. 2d 1094, 1115 (D. Ariz. 1999) (citations omitted).

The Local Rules of Civil Procedure further provide, in pertinent part, that a court will ordinarily deny a motion for reconsideration "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." D. Ariz. Local R. Civ. P. 7.2(g)(1). Furthermore, the motion "shall point out with specificity any new

3

matters being brought to the Court's attention for the first time and the reasons

they were not presented earlier, and any specific modifications being sought in the

Court's Order."  Id.  Moreover, "no motion for reconsideration of an Order may

repeat any oral or written argument made by the movant in support of or in

opposition to the motion that resulted in the Order."  Id.  Failure to comply with

Local Rule 7.2(g)(1) may be grounds for the denial of the motion.  Id.

DISCUSSION

Defendants argue that the Court must reconsider its prior order for

two reasons.  (Dkt. # 1402 at 8.)  First, Defendants contend that the Order applied

the wrong burden of proof in ruling on RID's motion for partial summary

judgment.  (Id.)  Second, Defendants assert that the Order ignores substantial

evidence which creates a genuine issue of material fact which precludes judgment

in favor of RID on the issue of consistency with the NCP.  (Id.)

A.    NCP Compliance

As discussed in the Court's Order on NCP compliance, a private party

may not recover response costs under the Comprehensive Environmental

Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq.

("CERCLA"), unless the remedial actions generating those costs are consistent

with the NCP.  42 U.S.C. § 9607(a)(4)(B); Carson Harbor Vill. v. Cnty. of Los

Angeles, 433 F.3d 1260, 1265 (9th Cir. 2006).  The Environmental Protection

4

Agency ("EPA") promulgates the NCP, delineating specific steps a private party must take in selecting a remedial action plan and cleaning up hazardous waste.  See 40 C.F.R. pt. 300.  It is "designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment." Wash. State Dep't of Transp. v. Wash. Nat. Gas. Co., 59 F.3d 793, 802 (9th Cir. 1995).

Additionally, the Court's Order noted that under EPA regulations, private response action is "consistent with the NCP" if the action, evaluated as a whole, is in "*substantial compliance*" with certain procedural requirements, and results in a "CERCLA-quality cleanup."  (Dkt. # 1396 at 13 (emphasis added)); see 40 C.F.R. §§ 300.700(c)(3)(i), 300.700(c)(4) ("immaterial or insubstantial deviations" will not render a response action inconsistent with the NCP).  The NCP's procedural requirements include, inter alia, that the party seeking response costs conduct a remedial site investigation, prepare a remedial investigation and feasibility study ("RI/Feasibility Study"), and provide an opportunity for public comment.  Id. §§ 300.700(c)(5)(vii), 300.700(c)(5)(viii), 300.700(c)(6).

A plaintiff must "conduct a site-specific baseline risk assessment to characterize the current and potential threats to human health and the environment" when carrying out a remedial investigation ("RI").  40 C.F.R. § 300.430(d)(4). During the feasibility study ("Feasibility Study"), the plaintiff must develop

remedial alternatives reflecting the scope and complexity of the remedial action under consideration based on the site and establish acceptable exposure levels that are protective under the ARARs established by federal or state law.  Subsequently, these remediation alternatives must be screened in light of effectiveness, implementability and cost.  Id. §§ 300.430(e)(1), (e)(7)(i)–(iii).  The Feasibility Study should also include discussion of a "no-action alternative, which may be no further action if some removal or remedial action has already occurred at the site," id. § 300.430(e)(6), as well as alternatives that protect human health and the environment, id. § 300.430(e)(2).  Further, remediation goals should "establish acceptable exposure levels that are protective of human health and the environment" by considering "[a]pplicable or relevant and appropriate requirements [ARARs] under federal environmental or state environmental or facility siting laws."  Id. § 300.430(e)(2)(i)(A).

Finally, in a Feasibility Study, a more "detailed analysis shall be conducted on the limited number of alternatives that represent viable approaches to remedial action after evaluation in the screening stage."  Id. § 300.430(e)(9).  During this "detailed analysis" stage, the NCP instructs the remediating party to complete an analysis of the viable alternatives considering the following factors in descending order of importance: (1) overall protection of human health and the environment; (2) compliance with ARARs; (3) long-term effectiveness and

performance; (4) reduction of toxicity, mobility, or volume through treatment;

(5) short-term effectiveness; (6) implementability; (7) cost; (8) state acceptance;

and (9) community acceptance.  Id. § 300.430(e)(9)(iii).

      B.     <u>Burden of Proof Under § 107(a)(4)(B)</u>

        Defendants contend that the Court's Order relied on cases involving

§ 107(a)(4)(A) CERCLA claims, and not on cases relying on § 107(b)(4)(B) of

CERCLA.  (Dkt. # 1402 at 9.)  As an initial matter, however, the Court notes that

there is no § 107*(b)*(4)(B) of CERCLA; thus, the Court must presume that

Defendants meant § 107*(a)*(4)(B).  In any case, Defendants argue that under that

section of CERCLA, the burden of proof is different for entities such as RID, than

the burden of proof for cost recovery claims under § 107(a)(4)(A) brought by

federal or state regulators.  (Dkt. # 1402 at 9.)  Specifically, Defendants contend

that under § 107(a)(4)(B) (presumably), it is RID's burden to affirmatively prove

that its actions are consistent with the NCP, and that it has incurred NCP-consistent

costs in implementing these actions.  (Id.)

        Contrary to Defendants' contention, the Court did not presume at any

point that RID's actions were consistent with the NCP.  In fact, the Court

specifically rejected RID's argument that extension of the government action

presumption is appropriate and warranted in this case based on close supervision

by the ADEQ.  (Dkt. # 1396 at 26.)  Instead, the Court's Order repeatedly

emphasized that it was RID's burden to affirmatively prove that its actions were consistent with the NCP.  (See, e.g., Dkt. # 1396 at 13.)  The Court noted however that "the applicable yardstick is 'substantial compliance,'" thus "a private party's 'site evaluation does not have to comply strictly with the letter of the NCP, but only must be consistent with its requirements.'"  (Dkt. # 1396 at 29) (quoting Wilson Road Dev. Corp. v. Fronabarger Concreters, Inc., ___ F. Supp. 3d ___, 2016 WL 4944082, at *19 (E.D. Mo. Sept. 16, 2016); Gen. Elec. Co. v. Litton Indus. Automation Sys., Inc., 920 F.2d 1415, 1420 (8th Cir. 1990), abrogated in part on other grounds by Key Tronic Corp. v. United States, 511 U.S. 809 (1994)).

Accordingly, to the extent Defendants argue the Court applied the wrong burden of proof when considering RID's compliance with the NCP, that argument is without merit.  The Court did not apply to RID a presumption of consistency with the NCP that would be available to governmental entities under § 107(a)(4)(A).  (See Dkt. # 1396 at 26.)  At no point did the Court presume, without considering RID's evidence, that RID had complied with the NCP. Instead, the Court considered RID's evidence, in conjunction with any controverting evidence, when determining that there was no genuine issue of material fact that RID substantially complied with the NCP.  Furthermore, as mentioned above, the Court specifically stated that it would not consider whether any significant agency involvement can satisfy certain NCP compliance

8

requirements, despite a finding by other circuits considering the same.[1]  (Dkt.
# 1396 at 26.)

               Additionally, to the extent Defendants argue that the Court applied the
wrong burden when considering a cross-motion for summary judgment, this
contention is likewise without merit.  The Ninth Circuit has held that "[w]here the
parties file cross-motions for summary judgment, the court must consider each
party's evidence, regardless under which motion the evidence is offered."  Las
Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011).  Defendants'
response to RID's cross-motion attempted to refute RID's evidence that it had
substantially complied with the NCP.  In considering both RID's evidence and
Defendants' evidence in turn, the Court found that RID was able to meet its burden
of providing evidence that it substantially complied with the NCP, ultimately
overcoming summary judgment on each of the issues identified by Defendants.
(See Dkt. #  1396 at 39–42.)  Accordingly, the Court will not reconsider its Order
on RID's compliance with the NCP based on Defendants argument that the Court
applied the wrong burden.[2]

---

[1] In responding to the motion to reconsider, RID again urges the Court to make a
finding on this basis.  (Dkt. # 1406 at 14.)  Because the Ninth Circuit has not made
such a ruling, the Court once again declines to do so here.

[2] Furthermore, to the extent Defendants' critique the Court's quotation of the 10th
Circuit in United States v. Burlington N. R.R. Co., 200 F.3d 679, 695 (10th Cir.
1999), this argument is also meritless.  The Court quoted Burlington, a CERCLA

C.   Cost-Effectiveness

In moving to reconsider, Defendants also critique the Court's analysis of RID's compliance with the NCP's cost-effectiveness requirement.  (Dkt. # 1402 at 10.)  Defendants contend that while the Court considered RID's evidence that it considered cost-effectiveness in choosing a remedy, the Court failed to consider any evidence that the chosen remedy was actually cost-effective.  (Id.)  Defendants assert that there is evidence in the record which creates a genuine dispute as to whether RID complied with the NCP's mandate that a party consider both cost-effectiveness and that a remedial action actually be cost-effective.  (Id. at 10–11.)

As an initial matter, the Court notes that Defendants did not directly raise and assert this argument concerning a requirement under CERCLA that RID must prove that its chosen remedy was actually cost-effective in Defendants' response to RID's cross motion for summary judgment.  (See Dkt. # 1363 at 9.)  Instead, Defendants previously argued that (1) RID did not consider any other

---

case brought under § 107(a)(4)(A), by stating that "any proof that RID's remedial actions were inconsistent with the NCP 'is not a complete defense to liability for the cost of remediating a site.'"  (Dkt. # 1396 at 23.)  In quoting Burlington, the Court did not shift any burden or requirement that a private or other party demonstrate "substantial compliance" with the NCP; instead, the quote was placed in the context of Defendants' focus on RID's response actions instead of RID's response costs under the NCP.  (See id.)  In any case, the Court noted that while it found merit to RID's argument regarding Defendants' focus on response actions, the matter was ultimately "not dispositive to the overall issue in Defendants' summary judgment motion."  (Id. at 22.)  As such, the Court did not grant summary judgment in favor of RID on this basis.

remedial alternative other than immediate and active treatment of water pumped by

its wells and brought to drinking water standards; and (2) RID failed to evaluate a

cost-effective *alternative* by comparing costs of remedial action versus risk

reduction.  (Id.)  As already noted, a court will ordinarily deny a motion for

reconsideration "absent a showing of . . . legal authority that could not have been

brought to its attention earlier with reasonable diligence."  D. Ariz. Local R. Civ.

P. 7.2(g)(1).  Nevertheless, to be thorough, the Court will consider the merits of

Defendants' argument.

              Defendants' motion cites evidence which they consider demonstrates

that a genuine issue of material fact exists regarding whether RID complied with

the NCP's mandate that it consider both cost-effectiveness in selecting a remedy

and that the remedial action actually be cost-effective.  (Dkt. # 1402 at 10—11.)

The gist of Defendants' evidence consists of four main categories regarding cost-

effectiveness: (1) that treating water at a few wells and then discharging the water

back into the canals to mix with sewer water is not cost-effective; (2) there is

currently no risk to public health; (3) the water is suitable right now for irrigation

purposes; and (4) implementing wellhead treatment does not address the water

remaining in the aquifer because VOCs are removed from the aquifer by RID's

normal operations.  (Dkt. # 1402 at 11–13; Dkts. ## 1321, 1365, 1329-1.)

A remedial action is "cost-effective if its costs are proportional to its overall effectiveness."  40 C.F.R. § 300.430(f)(1)(ii)(D).  Overall effectiveness is measured by evaluating the "long-term effectiveness and permanence, reduction of toxicity, mobility, or volume through treatment, and short-term effectiveness" of the remedy.  Id.  The cost-effectiveness of a remedy is evaluated when the remedy is selected.  Id.

"By requiring a cost-effective response, the [NCP] does not mandate the cheapest possible response.  Instead, courts have held that more expensive options were cost effective when the added expense bought additional environmental benefit."  Pentair Thermal Mgmt., LLC v. Rowe Indus., Inc., Nos. 06-cv-07164, 10-cv-01606, 2013 WL 1320422, at *20 (N.D. Cal. Mar. 31, 2013) (quoting AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc., No. S-00-cv-113 LKK (JF), 2011 WL 1833179, at *16 (E.D. Cal. May 12, 2011)).

As already determined in the Court's Order on RID's cross-motion for summary judgment, RID sufficiently considered the cost-effectiveness of its chosen remedy in relation to other viable alternatives.  (See Dkt. # 1396 at 39.) While there is no dispute that the chosen remedy was not the least expensive alternative,[3] a plaintiff demonstrating that it substantially complied with the NCP

---

[3] Defendants note "that it is RID's burden to prove that its remedial action is at least a cost-effective remedy and that no reasonable trier of fact could conclude otherwise."  (Dkt. # 1407 at 10.)  Defendants argue that RID's chosen remedy "to

need not demonstrate such cost.  See Pentair, 2013 WL 1320422, at *20.  Instead,

RID has produced evidence that it targeted the most highly contaminated wells and

other infrastructure in order to reduce the toxicity, mobility, and volume of

hazardous substances in the affected area, and that it did so in a cost-effective

manner, even if it was not the least expensive manner.  (See Dkt. # 1185-3 at 164–

67, 197–99, 203–09; Dkt. # 760-3 at 30–37.)

       As the district court recognized in Pentair Thermal, "[g]iven

CERCLA's policy goals of effecting permanent environmental cleanups and

encouraging private parties to undertake remedial work, the Court places great

weight on the long-term effectiveness and reduction of toxicity factors."  Pentair

Thermal, 2013 WL 1320422, at *15.  Like in Pentair Thermal, "the benefit of

[RID's] plan is that it is meant to remove as much contamination as possible,

which contribute[s] to the permanence of the remediation and a reduction in the

mobility and volume of the contamination."  Id.  That RID's chosen remedial

---

spend millions of dollars to treat water to drinking water standards, only to dump
that water into a canal system with sewer effluent for irrigation use," is not cost-
effective.  (Id.)  However, as already determined in the Court's Order, "Defendants
[in overcoming summary judgment] have not presented evidence of the existence
of any other "significantly more cost effective permanent remedial alternative."
(Dkt. # 1396 at 33 (citing Sealy Connecticut, Inc. v. Litton, Industries, Inc., 93 F.
Supp. 2d 177, 1877 (D. Conn. 2000)).)  While the burden to demonstrate
substantial compliance with the NCP is not on Defendants, Defendants still must
produce evidence which creates a genuine issue of material fact in a summary
judgment motion.  See Fed. R. Civ. P. 56(a).

action has the added benefit of treating the water to drinking water standards, and then releasing the water into canals for irrigation purposes, is not prohibited under CERCLA and the Court must consider that when determining if RID has met its burden of proving that it chose a cost-effective remedy, and ultimate burden of proving substantial compliance with the NCP.

Still, despite all of this, the Court has already determined that RID may only recover those costs that it actually incurred in responding to the remediation. (See Dkt. # 1394 at 17; Dkt. # 1366 at 39.) That the costs may be borne by another entity is not at issue in the instant matter and it does not limit the Court from finding here that RID's chosen remedial action is overall cost-effective for an effective treatment of the contamination.

The Court also notes, as it determined in the Order on RID's cross-motion for summary judgment, that, although the remedy was not the most cost-effective, RID thoroughly engaged in a public vetting process of its remedial plan. (See Dkt. # 1396 at 39.) The Court's Order stated that

> RID has demonstrated that it engaged in an extensive public vetting process of its ERA and MERA proposals, and that Defendants themselves participated in this process. (See Dkt. # 1178 at 14–23.) Specifically, RID's MERA was "proposed in order to provide a more cost effective approach to protect the RID water supply by accomplishing the objectives of the RID ERA remedial action." (Dkt. # 1178-2 at 7–8; Dkt. # 1178-5.) The MERA expressly identifies actions to be taken to reduce capital, operation, and maintenance costs. (Dkt. # 1178-8.) Additionally, RID's draft revised Feasibility Study specifically chooses the remedial plan identified as the "less-

14

aggressive remedy," in which the cost-effectiveness of that remedy was previously evaluated.  (Dkt. # 1178-9 at 215; 129 (discussing the GAC technique); 220–222.)

(Dkt. # 1396 at 39–40.)

Based on the foregoing, the Court finds no need to reconsider its prior decision on RID's compliance with the NCP's cost-effectiveness requirement.

D.   Other Elements of NCP Compliance

Defendants also contend that the record reflects disputed issues of material fact regarding other elements of NCP compliance.  (Dkt. # 1402 at 15.) Defendants again assert that the Court improperly placed the burden of demonstrating that RID's actions and costs were consistent with the NCP on Defendants.[4]  (Id. at 16.)  Defendants challenge the Court's rulings on public participation, development of a no-action remedy, ARARs, and risk assessment. (Id. at 16–18.)

1.   Public Participation

Defendants again reiterate their previous argument that RID selected its remedy before conducting a proper NCP analysis.  (Dkt. # 1402 at 16.)  The Court will once again reject this argument.  The Court has already acknowledged that RID's decision to proceed with a remediation decision prior to its submission

---

[4] As previously discussed, Defendants' argument regarding RID's burden is without merit.  The Court carefully considered RID's burden under § 107(a)(4)(B) when ruling on its cross-motion for summary judgment regarding NCP compliance.  (See Dkt. # 1396.)

15

of an ERA, Remedial Investigation, or Feasibility Study to ADEQ was likely

"predominantly driven by factors other than RID's remedial investigation and

plans."  (Dkt. # 1396 at 32.)  The Court further noted that "RID likely put the

'proverbial' cart before the horse in selecting an initial remedy prior to a full

investigation, and later proposing the remedy to ADEQ using 'post hoc supporting

rationale.'"  (See id. (citing Sealy, 93 F. Supp.2d at 185).)  The Court, however,

held that

> RID has complied with the public comment requirements.  See Sealy
> 93 F. Supp. 2d at 186 ("Notably, all of [the] cases where the courts
> have found the plaintiff's RI/FS non-compliance inconsistent with the
> NCP involved additional requirements as well, most typically the
> public comment requirement.").  Nor do Defendants dispute that RID
> has kept them informed at each stage of the process and included them
> in the public vetting process . . . .  (See Dkt. # 1329-1.)

(Dkt. # 1396 at 32.)

In making its findings and granting summary judgment in favor of

RID on its cross-motion, the Court did not improperly place the burden on

Defendants.  Instead, the Court considered RID's evidence that it substantially

complied with the NCP regarding public participation requirements, including

evidence that it "submitted no fewer than 47 specific work products to ADEQ, and

engaged no fewer than 73 public meetings to communicate its proposed remedial

actions to external project stakeholders."  (Dkt. # 1328 at 12.)

### 2.   Development of the No-Action Remedy

Defendants again urge the Court to find that there is no dispute that RID failed to consider the no-action alternative.  In making this argument, Defendants contend again that the Court improperly considered the burden on Defendants applied to actions under § 107(a)(4)(A) for governmental entities, and not under § 107(a)(4)(B) applied to private and other parties.  The Court disagrees. The Court, in considering that it is RID's burden to demonstrate substantial compliance with the NCP under § 107(a)(4)(B) (see Dkt. # 1396 at 12–14), found that RID (1) had complied with the public comments requirements; (2) prepared several drafts to ADEQ of Feasibility Study that considered four differing alternatives; (3) while the draft revised Feasibility Study did not include a no-action alternative, it appears to have substantially complied with other requirements for a Feasibility Study; and (4) RID did in fact consider a no-action alternative in its 2009 Implementation Plan, prior to the draft revised Feasibility Study.  (See Dkt. # 1396 at 31–34.)  Given this analysis, the Court will not reconsider Defendants' argument regarding a no-action alternative.

### 3.   ARARs

Defendants also move to reconsider the Court's decision on site-specific applicable or relevant and appropriate requirements ("ARARs").  (Dkt. # 1402 at 17.)  Defendants base this argument again on RID's selection of a

remediation plan before completing any technical evaluation.  (Id.)  The Court

however has already considered this argument and rejected it.  Furthermore, the

Court found that

> The record indicates that RID gave substantial thought and attention
> to compliance with site-specific Arizona law.  Additionally, the record
> indicates that ADEQ gave significant oversight in the remediation
> process and approved the draft revised Feasibility Study, noting that
> "ADEQ has determined that the FS Report meets the requirements of
> Arizona Revised Statutes 49-287.03 and Arizona Administrative Code
> R18-16-407 and therefore ADEQ is approving RID's FS Report."
> (Dkt. # 1321-2 at 32.)  Accordingly, ADEQ's significant involvement,
> with who RID consulted on a regular basis and invited public
> comment and vetting on several occasions, is sufficient evidence to
> overcome summary judgment because it suggests that RID satisfied
> its obligations to meet ARARs.   See Franklin Co. Convention
> Facilities Auth. v. Am. Premier Underwriters, Inc., 240 F.3d 534, 544
> (6th Cir. 2001).

(Dkt. # 1396 at 35–36.)  The Court will not reconsider Defendants' argument

concerning ARARs.

### 4.   Risk Assessment

Finally, Defendants ask the Court to reconsider its findings on the risk

assessment requirement of the NCP.  (Dkt. # 1402 at 18.)  Once again, Defendants

base this argument on RID's selection of its remediation action prior to completion

of a feasibility study.  (Id.)  And, once again, the Court will reject this argument.

See Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 892 (9th Cir. 1986)

(concluding "that the district court erred in ruling that an authorized governmental

cleanup program was a prerequisite to Wickland's claim for damages under section

107(a)[(4)(B)] of CERCLA").  To the extent Defendants ask the Court to reconsider its decision on the same evidence previously rejected by the Court, the motion is denied.  As the Court previously found, RID produced sufficient evidence demonstrating that it substantially complied with the human health risk assessments under 40 C.F.R. § 300.430(d)(1)–(4).  The Court denies the motion to reconsider on this basis.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion for Reconsideration of Court's Order Granting Plaintiff's Cross-Motion for Partial Summary Judgment Re: NCP Compliance.  (Dkt. # 1402.)

**IT IS SO ORDERED.**

**DATED**:  Phoenix, Arizona, May 12, 2017.

David Alan Ezra
Senior United States Distict Judge

19