1    **UNITED STATES DISTRICT COURT**

2    **FOR THE DISTRICT OF ARIZONA**

3    _____

4

5    **Roosevelt Irrigation District,**    )
     **a political subdivision of**         )
     **the State of Arizona,**              )

6                                           )    No.  **2:10-CV-00290-DAE-BGM**
                      Plaintiff,            )

7                                           )
             vs.                            )    Phoenix, Arizona

8                                           )    November 7, 2017
     **Salt River Project Improvement**     )    9:14 a.m.

9    **and Power District, a political**    )
     **subdivision of the State of**        )

10   **Arizona, et al.**                    )
                      Defendants.

11   _____

12

13

14           **BEFORE:   THE HONORABLE DAVID A. EZRA, JUDGE and**

         **THE HONORABLE BRUCE G. MACDONALD. MAGISTRATE JUDGE**
15

16

17           **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

                     **STATUS CONFERENCE**
18

19

20   Official Court Reporter:
     Robin G. Bobbie, RMR, CRR

21   Sandra Day O'Connor U.S. Courthouse, Suite 312
     401 West Washington Street, SPC 37

22   Phoenix, Arizona 85003-2151
     (602) 322-7248

23

     Proceedings Reported by Stenographic Court Reporter
24   Transcript Prepared by Computer-Aided Transcription

25

1                        **A P P E A R A N C E S**

2

3    For the Plaintiff:
         BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
4        By: **Andrew S. Friedman,** Esq.
         2325 E. Camelback Rd., Ste. 300
5        Phoenix, AZ 85016

6    For the Defendant Salt River Project:
         BALLARD SPAHR, LLP - Phoenix, AZ
7        By: **David John Armstrong,** Esq.
         1 E Washington St., Ste. 2300
8        Phoenix, AZ 85004-2555

9    For the Defendant Corning Incorporated:
         PERKINS COIE, LLP - Phoenix, AZ
10       By: **Shane R. Swindle,** Esq.
             **Michael Berman,** Esq.
11       P.O. Box 400
         Phoenix, AZ 85001-0400

12

13   For Defendants APS, Dolphin and ITT:
         SNELL & WILMER, LLP - Phoenix, AZ
         By: **Mitchell J. Klein,** Esq.
14       1 Arizona Center
         400 E. Van Buren
15       Phoenix, AZ  85004-2202

16   For Defendant United States Department of Energy:
         US DEPARTMENT OF JUSTICE
17       By: **C. Scott Spear,** Esq.
         ENRD EDS
18       P.O. Box 23986
         Washington, D.C.  20026-3896

19

20   For Defendant Air Liquide America Specialty Gases, LLC:
         SALMON, LEWIS & WELDON, PLC.
         By: **Michael Kenyon Foy,** Esq.
21       2850 E. Camelback Rd., Ste. 200
         Phoenix, AZ  85016

22

23   For Union Pacific Railroad Company:
         PEARSON LAW GROUP, LLC.
         By: **William W. Pearson,** Esq.
24       1221 E. Osborn Road, Ste. 101
         Phoenix, AZ  85014

25

1              **A P P E A R A N C E S (cont.)**

2

3    For Defendant Maricopa County:
         MARICOPA COUNTY ATTORNEY'S OFFICE - CIVIL SERVICES DIVISION
4        By:  **Ann Thompson Uglietta**, Esq.
         222 N. Central Ave, Ste. 1100
5        Phoenix, AZ  85004

6    For Defendant City of Phoenix:
         PERKINS COIE, LLP - Phoenix, AZ
7        By:  **Matthew Luis Rojas**, Esq.
         P.O. Box 400
8        Phoenix, AZ  85001-0400

9    For Defendant City of Phoenix:
         PHOENIX CITY ATTORNEY'S OFFICE - CIVIL DIVISION
10       By:  **Stephen Lawrence Wetherell**, Esq.
         200 W. Washington St., Ste. 1300
11       Phoenix, AZ  85003-1611

12   For Defendant Honeywell International Incorporated:
         JENNINGS, HAUG & CUNNINGHAM, LLP.
13       By:  **Karen Sinodis Gaylord**, Esq.
         2800 N. Central Ave, Ste.1800
14       Phoenix, AZ  85004-1049

15   For Defendant Univar USA Incorporated:
         VERIS LAW GROUP, PLLC.
16       By:  **Gregory T. Hixson**, Esq.
         1809 7th Ave, Ste. 1400
17       Seattle, WA  98101

18   For Defendant Prudential Overall Supply:
         LEWIS, ROCA, ROTHGERBER, CHRISTIE, LLP - Phoenix, AZ
19       By:  **Stanley B. Lutz**, Esq.
         201 E. Washington St., Ste. 1200
20       Phoenix, AZ  85004

21   For Defendant Dolphin Incorporated:
         POLSINELLI P.C. - Phoenix, AZ
22       By:  **Jonathan Grant Brinson**, Esq.
         1 E. Washington St., Ste. 1200
23       Phoenix, AZ  85004

24

25

1                    **A P P E A R A N C E S (cont.)**

2

3    For Defendant Honeywell International Incorporated:
          ARNOLD & PORTER KAYE SCHOLER, LLP - Los Angeles, CA
4         By:  **Sean Andrew McCormick**, Esq.
          777 S. Figueroa St., 44th Fl.
5         Los Angeles, CA  90017

6    For Defendant Reynolds Metals Company:
          K & L GATES, LLP - San Francisco, CA
7         By:  **Jason Nathaniel Haycock**, Esq.
          4 Embarcadero Center, 12th Fl.
8         San Francisco, CA  94111

9    For Defendant Textron Incorporated:
          Booth LLP
10        By:  **Ian P. Culver**, Esq.
          1849 Sawtelle Blvd., Ste. 500
11        Los Angeles, CA  90025

12   For Defendant Nucor and Kinder Morgan GP Incorporated:
          FENNEMORE CRAIG, PC - Phoenix, AZ
13        By:  **Scott K. Ames**, Esq.
          2394 E. Camelback Rd., Ste. 600
14        Phoenix, AZ  85016

15   For Defendant Freescale Semiconductor Incorporated:
          SHOOK, HARDY & BACON, LLP - Miami, FL
16        By:  **Sergio E. Pagliery**, Esq.
          2400 Miami Center
17        201 S. Biscayne Blvd.
          Miami, FL  33131

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

(Proceedings begin, 9:14 a.m.)

THE CLERK:  This is civil case number 10-290, Roosevelt Irrigation District v. Salt River Project Agricultural Improvement and Power District, et al., on for status conference.

Counsel, please announce your appearances.

MR. FRIEDMAN:  Good morning, Judge Ezra, Judge MacDonald.  I'm Andy Friedman from Bonnet, Fairbourn, Friedman and Balint.  I represent the plaintiff, Roosevelt Irrigation District.

JUDGE EZRA:  All right.  Good morning.

MR. ARMSTRONG:  Good morning, Judge Ezra, Judge MacDonald.  My name is David Armstrong from Ballard Spahr, and I represent Salt River Project, and I'll be speaking on behalf of defendants today.

MR. SWINDLE:  Shane Swindle and Mike Berman from Perkins Coie on behalf of Defendant Corning.

MR. KLEIN:  Mitchell Klein on behalf APS, Dolphin, and ITT.

MR. SPEAR:  Good morning, Your Honor.  Scott Spear, United States Department of Justice, on behalf of the United States Department of Energy.

MR. FOY:  Good morning, Your Honor.  Michael Foy on behalf of Air Liquide America Specialty Gases, LLC.

1          MR. PEARSON:  Good morning.  William Pearson for Union

2    Pacific Railroad.

3          MS. UGLIETTA:  Ann Uglietta for Maricopa County.

4          MR. ROJAS:  Matthew Rojas for the City of Phoenix.

5          MR. WETHERELL:  Stephen Wetherell for the City of          09:15:21

6    Phoenix.

7          MS. GAYLORD:  Karen Gaylord for Honeywell.

8          JUDGE EZRA:  She can't -- we need to have you speak up

9    a little bit.  You're kind of hiding behind.  There we go.

10          MS. GAYLORD:  Karen Gaylord for Honeywell.          09:15:31

11          JUDGE EZRA:  Those of you in the back, speak up.  Give

12    us your best auditorium voice.

13          MR. HIXSON:  Good morning, Your Honor.  Greg Hixson

14    for Univar.

15          MR. LUTZ:  Good morning, Your Honor.  Stan Lutz,          09:15:41

16    Lewis, Roca, Rothgerber, Christie, on behalf of Prudential

17    Overall Supply.

18          MR. BRINSON:  Good morning, Your Honor.  Jonathan

19    Brinson for Polsinelli on behalf of Dolphin.

20          MR. MC CORMICK:  Good morning, Your Honor.  Sean          09:15:51

21    McCormick on behalf of Honeywell.

22          MR. HAYCOCK:  Good morning, Your Honors.  Jason

23    Haycock on behalf of Reynolds Metal Company.

24          MR. CULVER:  Ian Culver for Textron.

25          MR. HENDRICKS:  Paul Hendricks, Roosevelt Irrigation          09:16:00

1    District.

2          JUDGE EZRA:  Anybody else?

3          MR. AMES:  Scott Ames on behalf of Nucor Corporation,

4    Kinder Morgan.

5          MR. PAGLIERY:  Sergio Pagliery for Freescale          09:16:10

6    Semiconductor.

7          JUDGE EZRA:  Is that it?  Okay.  Please be seated.

8          I'm glad we're not a -- I'm glad we're not a ship at

9    sea.  I think we might be listing slightly.  We got everybody

10   over here, and very few over here.  But first of all, I want to  09:16:27

11   thank all of you for making yourselves available, and I want to

12   thank Judge MacDonald, in particular, for making himself

13   available.  He's got a very busy schedule in Tucson, and I

14   asked that he join me here on the bench, because many of the

15   matters that we're going to discuss today directly impact a      09:16:47

16   role that I have envisioned for him as we go forward.  So I

17   thank him and his clerk for making themselves available and

18   driving in, because he's got to get back as soon as we're done.

19          The cases, as we know, are currently stayed.  The

20   cases are currently stayed.  They were stayed at the parties'   09:17:18

21   request pending my ruling on the motions for summary judgment.

22   Those rulings were issued some time ago, but the stay has

23   remained in place.  The stay is going to be lifted so this case

24   can proceed along a path which I'm going to discuss with you in

25   just a moment.                                                  09:17:49

1      We have become concerned, because one of the -- one of

2  the things both Judge MacDonald and I have been hearing is that

3  the parties are working on a global, in quotes, settlement of

4  this matter, and I trust that that's probably the case.  The

5  problem is, we haven't seen anything; we haven't received          09:18:17

6  anything.  And what we are receiving are peripheral or what

7  they believe are peripheral parties attempting to be settled

8  out piecemeal.  I've got one pending before me right now, which

9  I have not signed or approved.  And we got a flurry of calls

10  from other counsel saying, but we don't have any objection as     09:18:42

11  long as our cross-claims are preserved.  That I understand.  I

12  certainly understand.  I used to do complex litigation once

13  upon a time, and I've presided over some of the largest complex

14  litigation in this country, so I know how this system works.

15      One of my concerns and one of Judge MacDonald's           09:19:05

16  concerns is that we not find ourselves in an untenable position

17  trying to resolve this matter and/or trying to try it such that

18  we have certain parties that have settled with other parties

19  but haven't settled with other parties, and it becomes so

20  complex that we're trying to untangle a spiderweb of           09:19:30

21  connections here such that it's not worthwhile.  We want to

22  avoid that, and we also want to get the case back on track.

23      Now, having been a trial lawyer and having done some

24  plaintiffs, but mostly defense work, the fact of the matter is

25  that insurance companies and companies, in general, are not     09:20:03

```
1    rushing to the settlement door to pay out their fair share of

2    what every settlement needs to be paid, and they don't

3    encourage their lawyers to rush to the door either.  If it

4    happens three years from now or five years from now, they are

5    just as happy.  The problem is that clashes with something we      09:20:27

6    have in the federal system that nobody pays a lot of attention

7    to, but it's nonetheless there, called the Civil Justice Reform

8    Act.  And the Civil Justice Reform Act compels federal judges,

9    like Judge MacDonald and I, to move matters forward.

10           Now, obviously, there are limits to the kind of speed      09:20:53

11   one can impose on a complex litigation like this one with the

12   multiple parties and the lawyers that we have involved, but it

13   also is true that we don't want to find ourselves in a

14   situation where we're sitting on our hands.  And attorneys get

15   busy.  They get busy doing other more pressing things.  And       09:21:21

16   unless the Court makes a complex case, one of those pressing

17   things, then it just is going to stagnate.  And to some degree,

18   I think Judge MacDonald and I both believe that started to

19   happen here, and we want to make sure that we give this case a

20   big, giant shot of vitamin B-12 so that it doesn't happen and     09:21:54

21   we get it resolved, or we get it tried.  One of the two.  And

22   so we're going to move along those lines.

23           Now, to the extent that you have had -- I know you

24   probably were prepared to come before us today and tell us what

25   progress, I would hope, you would be prepared to tell us what     09:22:24
```

UNITED STATES DISTRICT COURT

1   progress you made towards settlement, but maybe you weren't.

2   In any event, I'm not going to call upon you to do that this

3   morning.  You're going to get a chance to do that for sure, but

4   it's going to be in a different way.  So I'm going to be, first

5   of all, so we can make sure that we keep things in order, I'm          09:22:46

6   going to be issuing an order probably early next week lifting

7   the stay, so the stay is going to be lifted.  So you know that,

8   all right?

9        So you need to pay attention to the case, because

10   there's no longer going to be a stay in effect, and that's been        09:23:06

11   one of the reasons why people haven't been paying a heck of a

12   lot of attention to the case.  And quite frankly, if I was in

13   your position, neither would I.  If a case is stayed, it's

14   stayed, you go on to other things.  Well, this case is not

15   going to be stayed any longer.                                          09:23:22

16        Secondly, there are a couple of 2016 cases out there.

17   They were filed in December of 2016, and they are currently

18   assigned to Judge Tuchi.  They really are so directly related

19   to these cases that the chances are very good that 444-7 and

20   444-8, which is the two 2016 cases, are going to be reassigned          09:23:52

21   and redesignated, because I need a new designation, but that's

22   not going to be a problem.  They are going to be reassigned and

23   redesignated to me, and they are going to be part of our global

24   universe of Roosevelt Irrigation Litigation.  So those of you

25   who are involved in those cases before Judge Tuchi, you should          09:24:14

1   understand that the chances are very good that as of either

2   next week or shortly thereafter, as soon as the designation

3   comes down, that those cases are going to be part of this

4   litigation and they are not going to be sitting with Judge

5   Tuchi.                                                          09:24:38

6           Now, I do want to tell you, there's a couple of 2015

7   quiet title actions out there.  Are any of you involved in

8   those?

9           MR. ARMSTRONG:  Your Honor, it's David Armstrong on

10  behalf of SRP.  If you're talking about there's two really   09:24:50

11  water rights cases pending before Judge Tuchi, one is a quiet

12  title and other declaratory judgment action.

13          JUDGE EZRA:  I think that's right.  He's been working

14  on those.  Those I do not see directly related, and I think

15  Judge Tuchi has already been working on those.              09:25:07

16          MR. ARMSTRONG:  That's correct.

17          JUDGE EZRA:  Yeah, so those will not come over, in all

18  likelihood.  I think Judge Tuchi will continue to handle those,

19  and those will not become part of our universe here.

20          Now, in the old days, and I've been around 30 years as  09:25:23

21  a federal judge, so I remember the old days, we used to appoint

22  settlement masters.  We don't really do that much any more, and

23  in this case, I don't know how productive that would be.  But

24  in effect, what's going to happen here is that Judge MacDonald

25  is going to perform the functions, under my direction, of what  09:25:49

1    we used to refer to as a settlement master.  I'm not going to

2    formally issue an order appointing him settlement master, he's

3    a magistrate judge.  He's on this case, and so he doesn't need

4    that, and I'm not going to do it.  But in effect, what is going

5    to happen is that Judge MacDonald is going to, out of Tucson,            09:26:12

6    be handling the scheduling and the update and the reporting

7    requirements, and to the extent necessary, provide assistance

8    to the parties in moving this case toward a global settlement,

9    if that is what the parties wish to try to do.

10          Now, if you want to go to trial, let me know.  We'll         09:26:55

11   bifurcate this case as we need to, we'll set up a trial

12   schedule, and we'll try it.  Very few of these cases, as you

13   know, go to trial.  Most of them settle.  It doesn't mean this

14   one will, but most of them do.  We understand that you have

15   been working toward a global settlement; am I right?             09:27:14

16          MR. ARMSTRONG:  Correct.

17          JUDGE EZRA:  All right.  So, obviously, this is

18   something that the parties are interested in doing.  You're now

19   going to do it in concert with and under the direction of Judge

20   MacDonald.  You're not just going to be out there doing it on       09:27:31

21   your own.

22          Now, why am I doing this?  For the reasons I've just

23   told you.  I want to impose some structure and discipline into

24   this process.  It's a very big case.  There are a lot of

25   parties.  There's a lot of intertwined involvement, people            09:27:48

finger pointing.  Him, not me.  It's her, not them.  You know,

and when parties are left to their own devices in situations

like this, it takes years to settle the case, if it settles at

all.  And so this way I'm trying to help you and, of course,

help the Court maintain the integrity of a schedule here by

having Judge MacDonald oversee in a very hands-on way your

settlement negotiations.  It doesn't mean that Judge MacDonald

is going to sit in the room with you as you're trying to settle

the case, that may happen in some instances, but he is going to

set out a settlement schedule, and the parties are going to be

required to follow that schedule if they want to try to settle

the case.

          So, does anybody have any questions about that?  And

you will get orders from Judge MacDonald.  He's going to be

issuing orders that are going to be not signed off on by me.

These are orders, because he's going to have the -- he's got my

confidence, and he's got my direction, and he's going to be

issuing orders for people to appear.  And when I say "appear,"

I mean appear.  Not appear by telephone.  We're not going to

have any long-distance dating here, okay?  And that is one of

the big, big problems in cases like this, and it's one of the

reasons why -- by the way, and it's not because I try to be a

bad guy.  We got somebody calls and say, well, can we appear by

telephone?  Can we appear by telephone?  I made a big, big

mistake once in this case years ago by trying to be a, you

```
 1    know, a reasonable person, and I said yes.  Within two days, we
 2    had 30 calls.  Everybody wanted to appear by phone.  We're not
 3    going to do that.  We need to have people physically present
 4    who have authority and are in a position to make decisions, and
 5    Judge MacDonald will work that out with you.  So he's going to        09:30:26
 6    be issuing what I might call an omnibus settlement order in
 7    which he's going to first call the parties to Tucson to meet
 8    with him there, and at that point, he will talk with you about
 9    what your progress has been thus far, and then he will work
10    with you -- with you -- not impose upon you, but work with you        09:30:52
11    to set up a reasonable schedule by which you can move forward
12    towards settling this case in a global way that will resolve
13    all of the disputes between the parties, to the extent that it
14    can be done.
15            Now, there may come a point where 98 percent of the           09:31:15
16    case is settled, or 95 percent of the case is settled, and we
17    got to go to trial on some of it.  When I did the big railroad
18    litigation up in Chicago many, many years ago, we got most of
19    that settled.  We got almost all of it settled, but I still had
20    to take a little bit of it to trial.  Sometimes you can't get         09:31:35
21    every piece resolved, but hopefully that won't be the case
22    here.
23            All right.  So that's important to understand.  So you
24    will -- hearing from Judge MacDonald, he's going to be calling
25    you to Tucson, and at some point in time.  I'm sure it won't be       09:31:51
```

1    December 24th, so you'll be already there, but he'll call you

2    to Tucson and he'll meet with you, and you'll set out a

3    settlement schedule.  All right?  Work with him.  All right?

4            And I mean this when I say he is going to work with

5    you and not impose upon you, but that doesn't mean that if we        09:32:20

6    get a bunch of conflicting views that Judge MacDonald is not

7    going to have to make a decision.  That's why he's there,

8    because you get these conflicting views about, well, we're

9    this, that, and the other thing, and nobody does anything.

10   You're stuck in the middle of the road.  Somebody has to -- has     09:32:39

11   to put the pedal to the metal, and Judge MacDonald's job is to

12   do just that.

13           We're going to go on parallel lines here, because I

14   don't want to have this case stagnate in any way.  So while

15   Judge MacDonald is doing what he is doing with respect to          09:33:00

16   working with you toward a global settlement on the one hand, on

17   the other hand, we are going to be setting a schedule for

18   disclosure of expert opinion reports and a deadline for the

19   filing of any Daubert motions that people want to file.  My

20   favorite -- I should say least favorite -- type of motions to     09:33:26

21   hear, but nonetheless, I am quite sure that I will have to hear

22   some of them, and that's something I have to do.  I'm not going

23   to have Judge MacDonald doing, you know, that's double work for

24   him, and it's double work for you.  I don't believe in it.  I'm

25   not going to R & R Daubert motions to Judge MacDonald, and then    09:33:43

UNITED STATES DISTRICT COURT

1    have somebody appeal, and then we have to have a whole new

2    second set of Daubert motions on the same darn motion.  I will

3    hear the Daubert motion straight up from the beginning, and

4    we'll do those hearings here in Phoenix, to the extent that we

5    have them.  Now, you could surprise me, we might not have any          09:34:03

6    Daubert motions here, but I would be shocked.

7            So Judge MacDonald will be issuing that order in

8    consultation with my chambers so we can try to fit it into my

9    "nutsky" schedule.  And so that you can do the expert

10   disclosures, and then we'll set deadlines for any Daubert            09:34:25

11   motions, all right, so we can move along that track.

12           I think that is all that I needed to cover; right,

13   Bruce?  All right.

14           Yes, sir?

15           MR. ARMSTRONG:  Your Honor?                                   09:34:43

16           JUDGE EZRA:  You want to announce yourself so we can

17   have it on the record?

18           MR. ARMSTRONG:  I'm sorry?

19           JUDGE EZRA:  You want to announce it.  I know who you

20   are, but we need to have it on the record.                           09:34:50

21           MR. ARMSTRONG:  David Armstrong on behalf of Salt

22   River Project.

23           I had a question and some clarification with regard to

24   your scheduling of experts, and that process.  I think where we

25   had left off, and I just wanted to bring this to your              09:35:02

```
 1   attention, you may already know this, but in case it slipped

 2   threw the cracks I wanted to mention this, when we -- when the

 3   stay was introduced back -- basically about a year ago --

 4           JUDGE EZRA:  Yeah.

 5           MR. ARMSTRONG:  -- Judge MacDonald had denied RID's        09:35:16

 6   request for protective order.  They had requested a protective

 7   order to preclude the defendants from certain inquiries during

 8   discovery.

 9           JUDGE EZRA:  Right.  I was aware of that.

10           MR. ARMSTRONG:  Okay.  Judge MacDonald, he denied         09:35:30

11   that.  And we understood at the time that the stay was put in

12   place that RID had planned to file objections with you.

13           JUDGE EZRA:  Yes, you can still do that.

14           MR. ARMSTRONG:  Okay.  And then after that, I believe

15   we still have some time left for fact discovery as well before   09:35:40

16   we get into --

17           JUDGE EZRA:  I thought that fact discovery had closed.

18           MR. ARMSTRONG:  No.

19           JUDGE EZRA:  Am I wrong?

20           MR. ARMSTRONG:  I'm pretty sure it has not.              09:35:49

21           JUDGE EZRA:  See, this is one of the problems.  This

22   thing kind of drags on.  It's like the freight train that

23   you're waiting for and it never ends at the crossing?

24           Yeah?

25           MR. FRIEDMAN:  Your Honor, Andy Friedman on behalf of     09:36:01
```

1   RID.  Again, just to add to what Mr. Armstrong was saying, at

2   the time of the stay, there was a period left for fact

3   discovery.

4           JUDGE EZRA:  How much time was left?

5           MR. ARMSTRONG:  Ninety days.                    09:36:15

6           MR. FRIEDMAN:  Ninety days.

7           JUDGE EZRA:  Ninety days?  Three months?  That will

8   fit in well within --

9           MR. FRIEDMAN:  I was just going to complete the

10  context for Your Honor.  The parties were engaged in       09:36:27

11  discussions concerning privilege logs, assertion of privilege,

12  and attempting to resolve their differences.  As to the type of

13  privilege logs, would they be categorical, or document by

14  document, and intended to proceed before Judge MacDonald if

15  we're unable to resolve those differences.                 09:36:49

16          JUDGE EZRA:  Right.

17          MR. FRIEDMAN:  So as a practical matter, obviously

18  before fact discovery can be completed, we need to have some of

19  these privilege issues resolved so we can take depositions.

20  They relate largely to consultants and their role earlier as  09:37:00

21  the case was being investigated.

22          JUDGE EZRA:  Sure.

23          MR. FRIEDMAN:  And so I don't know if it helped Your

24  Honors, but we -- we might want to propose for you a timetable

25  for those preliminary matters to be finished for the completion  09:37:17

1    of fact discovery and then, of course, would pick up with

2    expert disclosures, because we can't really complete these

3    depositions unless we either resolve or get some guidance on

4    some of these somewhat thorny privilege issues.

5          JUDGE EZRA:  All right.  What I would suggest is this:  09:37:34

6    I had -- I will confess that, as I think I just stated a moment

7    ago, I thought the fact discovery had concluded, but it's been

8    -- the problem is it's been a year.  And I can't tell you how

9    many trials I've presided over and crazy stuff that's been

10   going on with my calendar, so I had lost track of -- of the    09:37:53

11   fact that there were still 90 days' worth of fact discovery

12   left in this case.

13         Given that situation, now that you've brought it to my

14   attention, I would -- well, I'm lifting the stay.  So the fact

15   discovery, when I lift the stay, your clock is then running on  09:38:19

16   your fact discovery, any pending appeals which you might have

17   to something that might have been stayed, that's running.  Your

18   clock is running.

19         So I think that with respect to the matters that

20   you've just brought to my attention, I would suggest that if    09:38:41

21   the parties are able to work out a reasonable schedule, then

22   you should submit that to Judge MacDonald in the first

23   instance, because he's the one that's handling the pretrial

24   discovery.

25         MR. FRIEDMAN:  We will, Your Honor.  There was one        09:38:58

1  other question that I had for you.

2          JUDGE EZRA:  Sure.

3          MR. FRIEDMAN:  You indicated that the other two cases

4  that currently are before Judge Tuchi --

5          JUDGE EZRA:  Yes.                                    09:39:09

6          MR. FRIEDMAN:  -- will be referred to Your Honors, and

7  you expect them to be coordinated.  I guess the question in my

8  mind is, do you expect the cases to then proceed in a parallel

9  fashion, since those cases are at the pleading stage only?

10         JUDGE EZRA:  Yeah, it is a problem.  Those cases are   09:39:24

11 going to get -- it is a bit of a problem.  The Court may have

12 to make, upon application, a reasonable exception to deadlines

13 to the extent that there needs to be any particularized fact

14 discovery or expert disclosures on those matters, but they are

15 going to get wrapped in.  And for all intents and purposes,    09:39:56

16 they are going to be following the same schedule as the main

17 cases.

18         Now, to the extent that there are some things that

19 need to be done in those cases, we're not going to be

20 unreasonable.  We're certainly going to allow you to do that.  09:40:12

21 You're going to have make it a -- make a case-by-case request.

22 In the first instance, Judge MacDonald will look at it, and

23 he'll be reasonable.  He'll work with you.  And if you have an

24 objection to whatever he does, then you have the right to

25 appeal that.  But I think that we'll make sure that, in        09:40:29

UNITED STATES DISTRICT COURT

1   fairness, you do have the opportunity to flesh out any

2   particulars.

3          But the fact of the matter is, and we looked at these,

4   the majority of the circumstances apply, generally apply, to

5   these cases.  So we don't need to start at square one, even      09:40:51

6   though they are only at the pleading stage.

7          MR. FRIEDMAN:  Thank you, Your Honor.  We'll notify

8   plaintiff's counsel in those cases about our status conference

9   this morning.

10         JUDGE EZRA:  Thank you.  And they will get a separate      09:41:06

11  notice also from Judge MacDonald as soon as the matters are

12  transferred over.

13         Yes, sir?

14         MR. PEARSON:  Your Honor, William Pearson for Union

15  Pacific Railroad.  I would like to apprise the Court of another   09:41:19

16  issue --

17         JUDGE EZRA:  Mr. Pearson, it's not that you have a

18  light voice, and you and I have worked together for 20 years,

19  so I know what you sound like, but I'm worried about the

20  reporter not hearing you.                                        09:41:31

21         MR. PEARSON:  William Pearson, Union Pacific Railroad.

22  I would like to apprise the Court of another issue tied to the

23  Court's decision that it wants to reassign/redesignate those

24  two cases in front of Judge Tuchi.  One of those cases involves

25  the claim for attorneys' fees by Gallagher & Kennedy law firm.   09:41:47

```
 1   In that I've not seen the complaint itself, my client is not a
 2   party to that lawsuit.  All the individual defendants who moved
 3   to disqualify Gallagher & Kennedy in this underlying litigation
 4   were not sued in that lawsuit for obvious ethical conflict
 5   issues.                                                        09:42:13
 6           JUDGE EZRA:  Right.
 7           MR. PEARSON:  So if you're going to redesignate and
 8   bring that lawsuit into this lawsuit, that could cause some
 9   complications as to scheduling experts, etcetera, since we're
10   not even defendants in that lawsuit.                           09:42:24
11           JUDGE EZRA:  Well, to the extent, Mr. Pearson, that it
12   does, we will deal with those issues.
13           To be honest with you, Judge Tuchi, for reasons one
14   can understand, doesn't want to venture into the swamp of this
15   case.  And since I'm already and Judge MacDonald are already   09:42:48
16   neck high in it --
17           MR. PEARSON:  You're already in the swamp.
18           JUDGE EZRA:  I am.  We are.  And there's no Donald
19   Trump reference here, I promise.  You're all honorable people,
20   and I'm not concerned about that.  It just doesn't make any    09:43:07
21   sense to have Judge Tuchi trying to reinvent the wheel over
22   there, and there isn't anybody on our side, on the judiciary
23   side, that's looked at these matters.  And I recognize the
24   Gallagher & Kennedy issue.  I know that that's out there.
25           MR. PEARSON:  I just want to bring to the Court's      09:43:32
```

```
 1   attention, because that could impact scheduling and even
 2   potential global settlement, because that would not be included
 3   for some of the defendants would not be participating in a
 4   settlement relative to the claims.
 5          JUDGE EZRA:  We'll cross that bridge if and when we          09:43:45
 6   get there.
 7          Do you remember my earlier statement about my railroad
 8   litigation in Chicago?  I said we were able to settle
 9   everything.  I actually ended up trying two cases in Chicago.
10   That's what I was referring to.                                   09:44:05
11          MR. PEARSON:  All right.  Thank you.
12          JUDGE EZRA:  Okay?  So I'm aware.
13          MR. PEARSON:  Thanks.
14          JUDGE EZRA:  Thanks.
15          MR. LUTZ:  Your Honor, Stan Lutz on behalf of              09:44:22
16   Prudential Overall Supply.  Just a quick point of
17   clarification, in the underlying litigation, the third party
18   claims were deemed stayed until resolution of this.  Is that
19   stay remaining in place?
20          JUDGE EZRA:  I don't think so.  I think we're going to     09:44:35
21   move forward.  I'm going to be honest with you, I want there to
22   be an incentive for the parties and the lawyers to refocus and
23   recalibrate on this matter.  And if I keep portions and parties
24   and claims stayed, all those individuals that are involved in
25   that, who might otherwise be in a position to participate in     09:45:09
```

1    trying to resolve this, are going to sit back on the easy chair

2    and say "not me."

3            MR. LUTZ:  Your Honor, in addition to that, as I

4    recall, and I asked my colleagues if this is correct, I believe

5    the cross-claims were also deemed held in abeyance, basically,          09:45:27

6    until resolution of the plaintiff and defendants' litigation;

7    is that correct?  So the stay will equally apply to those kind

8    of cross-claims?

9            JUDGE EZRA:  It will.

10           MR. LUTZ:  Yes?                                               09:45:41

11           JUDGE EZRA:  Yes.

12           MR. LUTZ:  Thank you, Your Honor.

13           JUDGE EZRA:  You folks are going to, as we used to

14   say, I think Judge Laugh Waters once told me when I was

15   involved in a major litigation representing one of the parties        09:45:51

16   involving the development of a certain section of Waikiki, he

17   said -- we were in the same boat.  We were all trying to do a

18   global settlement, things weren't going.  And he said, I'm

19   going to put you back to work.  He did.  I ended up trying part

20   of that case because we didn't settle, but he put us back to          09:46:08

21   work.  And I think you're going to go back to work in this

22   case, and I think you need to meet with your individual clients

23   and alert them to the fact that this case is no longer on the

24   back burner; that the Judge asked that they be notified.  And

25   understand that we're going to do one of two things in this           09:46:34

```
 1    case:  We're going to either see it resolve by settlement, and
 2    to the extent that it can be resolved by settlement.  And to
 3    the extent that it can't be resolved by settlement, we're going
 4    to try it, and within a reasonable period of time.  That
 5    doesn't mean probably 2018 that we'll go to trial, because it's    09:46:58
 6    just -- it's too massive a case, but it could easily mean 2019.
 7              MR. ROJAS:  Your Honor?
 8              JUDGE EZRA:  Who are you?
 9              MR. ROJAS:  Matthew Rojas from Perkins Coie on behalf
10    of the City of Phoenix.                                            09:47:19
11              In the two parties that you say are going that are
12    currently in front of Judge Tuchi --
13              JUDGE EZRA:  Wait, wait.  Judge Tuchi has four cases,
14    so let me know --
15              MR. ROJAS:  The two that you are going to be bringing    09:47:29
16    into this case.
17              JUDGE EZRA:  Yes, sir.
18              MR. ROJAS:  The most recent ones.  The answers or
19    responses --
20              JUDGE EZRA:  We say most recent ones, do you know when   09:47:36
21    those cases were filed?
22              MR. ROJAS:  Well, they were served in October.
23              JUDGE EZRA:  But they were filed in December of 2016,
24    and then people were sitting on them, because I don't know why.
25    Never got served.  And then they got served, and nothing has      09:47:46
```

1    happened.  I mean, these cases are nine months old, ten months

2    old.  This is what happens in these -- in situations like this.

3         MR. ROJAS:  Well, Your Honor, my question is regards

4    to scheduling for answers and responses to those complaints

5    which were just served in October.  Parties are currently          09:48:04

6    working out an extension of time to answer.  Some of that's

7    already been filed in front of Judge Tuchi.  How do you want to

8    work that scheduling into this?

9         JUDGE EZRA:  Everything that's been filed -- I'm going

10   to be meeting -- Judge MacDonald and I are going to be meeting     09:48:20

11   with Judge Tuchi this afternoon, so I don't want to be

12   presumptuous.  I guess Judge Tuchi could change his mind and

13   decide he's going to keep these cases.  I would be shocked if

14   he did, but I think that what will happen is that any pending

15   motions before Judge Tuchi will come with the case to me, and     09:48:39

16   to the extent that they involve pretrial matters, they will go

17   to my dear friend Judge MacDonald.

18        MR. ROJAS:  Okay.  Your Honor, there's also a

19   possibility of third-party cross or third-party complaint.  In

20   that case, which to Mr. Pearson's point earlier, would involve    09:49:05

21   some of the parties that are involved in the current underlying

22   litigation but have not been involved yet in the new cases that

23   you will be bringing in into this matter.

24        JUDGE EZRA:  Well, you know, you have to file what you

25   have to file, don't you?                                          09:49:23

```
1              MR. ROJAS:  Absolutely.

2              JUDGE EZRA:  All right.  That's your answer.

3              MR. ROJAS:  I'm sorry?

4              JUDGE EZRA:  That's your answer.

5              MR. ROJAS:  Okay.                                    09:49:30

6              JUDGE EZRA:  I can't tell you not to file a

7    cross-claim or a third-party complaint.

8              MR. ROJAS:  Okay.

9              JUDGE EZRA:  Unless your deadline has passed, which it

10   hasn't.                                                        09:49:40

11             MR. ROJAS:  It has not.  Your Honor, would you extend

12   an extension of time to answer those complaints or --

13             JUDGE EZRA:  I wouldn't.  You might get Judge

14   MacDonald to.

15             MR. ROJAS:  Understood.                              09:49:50

16             Judge MacDonald, would you be inclined to --

17             JUDGE EZRA:  I don't think he's going to do it today

18   on the bench.  I think you're going to have to present that to

19   him, in light of everything else that's going on.  He's got to

20   sit down.  Poor Judge MacDonald feels like he's just been hit  09:50:03

21   by a truck.

22             MR. ROJAS:  I apologize for putting either of you on

23   the spot.

24             JUDGE EZRA:  You're not putting us on the spot.

25   That's why they pay us.  We're paid to be on the spot.         09:50:13
```

```
 1              Okay.  Anything else?

 2              MR. FRIEDMAN:  Your Honor, one last -- Andy Friedman

 3      for plaintiff.  One last question.  In light of our discussion

 4      earlier in which we are to confer and propose a schedule for

 5      Judge MacDonald, given the tasks that are before us --        09:50:32

 6              JUDGE EZRA:  Yes.

 7              MR. FRIEDMAN:  -- will your order lifting the stay

 8      give us a deadline for that, or would you like us to establish

 9      that today so we can get to work --

10              JUDGE EZRA:  I'm going to talk with Judge MacDonald.   09:50:42

11      Look, the fact of the matter is that I have a great deal of

12      personal respect and regard for the lawyers that are in this

13      case.  Many of them I've worked with -- I remember, I mean,

14      certainly some in the Pinal Creek case, but even before that

15      when I was presiding over the Arizona Project cases.  My God,  09:51:11

16      that was 1989.  Some of these lawyers were involved in the

17      Arizona Project cases.  I mean, I know the lawyers, many of the

18      lawyers and the law firms involved in this case, as well as I

19      know lawyers anywhere in the country, and I've great regard for

20      the lawyers involved in this case.  But I also know lawyers,    09:51:31

21      because I was one.  And I understand the pressures on you.  I

22      understand your clients and the insurance carriers, to the

23      extent that they are involved here.  And so I always, when I

24      was practicing law, appreciated -- in the end, not necessarily

25      at the beginning -- when a judge would step in and say we're    09:52:02
```

UNITED STATES DISTRICT COURT

1    going to add some structure and discipline to this process,

2    because there are just too many cats running around in the room

3    here, going in every different direction, and everybody

4    pointing fingers and trying to lay low.

5            I was, when I was practicing law, I represented Libby,    09:52:33

6    McNeil, Libby in something called The Heptachlor Litigation in

7    Hawaii, and that was a huge case.  And we had a lot of parties

8    in that case, and it was a big courtroom.  And Judge Fong, I

9    remember him commenting that we had lawyers that were so close

10   to the back door trying to keep their heads down that they were    09:52:56

11   out, almost out in the hallway.  People here are trying to keep

12   their heads down, I understand that, but it's time for us to

13   step up and get this moving, and it's in your client's best

14   interest to do it, too.  They need to put this behind them as

15   well, one way or the other.  So that's what we're going to do.    09:53:16

16           And I understand it injects some uncertainty to a

17   degree, and that because of the nature of the conflict

18   litigation -- heck, we had three years of conflict litigation

19   in this case -- there are minefields out there.  I recognize

20   that.  But what do I do, just put up my hands and say, well,    09:53:42

21   let's just sail on?

22           Those of you who were involved in Pinal Creek don't

23   know this, but I will tell you.  When Judge Goodwin assigned

24   that case to me, I was a very young judge at the time.  And I

25   said, why are you assigning to someone, chief, with so little    09:54:06

UNITED STATES DISTRICT COURT

1    experience?  He said, because it's going to take 20 years to

2    resolve, and if I give it to a senior judge, they'll be dead.

3    Well, we got it done in, what, 13?  12?

4           MR. SWINDLE:  It was 19 total.  It was 13 after you

5    took over.                                                    09:54:25

6           JUDGE EZRA:  Okay.  He was talking about 20 from

7    there.  Judge Silver still, you know, throws flowers at me when

8    I walk by her in the hallway.

9           So we don't want that to happen here.  We don't want

10   to be 13 years -- how long has this case being going on now?   09:54:43

11   I've lost track.  Five years?  Longer than that even, huh?

12          MR. ARMSTRONG:  Filed in 2010.

13          JUDGE EZRA:  2010.  Seven years, okay.  Well, we're

14   kind of long in the tooth, but we're not as bad as Pinal Creek.

15   We don't want to get there, all right?                         09:55:02

16          All right.  Well, thank you very much for being here.

17   I do appreciate it.  You will be hearing from Judge MacDonald

18   -- your -- well, the first thing you're going to get is an

19   order from me lifting the stay, and it's going to be very

20   simple.  It's just going to say that, okay?  So the stay is     09:55:17

21   going to be lifted.  That will happen.

22          The next thing you will see probably will be an order

23   pulling those two cases from Judge Tuchi into this.  Now, that

24   depends upon how long it takes the Circuit to do the

25   designation.  They could do it like that, or if judge -- Chief  09:55:36

1   Judge Thomas has gone somewhere, I don't know, it may take a

2   little longer.  Then you're going to start hearing from Judge

3   MacDonald, and that's when the wheels are going to start

4   rolling, okay?

5           JUDGE MACDONALD:  For all of you, I would like to -- I        09:56:00

6   appreciate the vote of confidence that Judge Ezra has placed in

7   me, and all of you, and I'm looking forward to your

8   cooperation.  We appreciate it and look forward to working with

9   you, so thank you very much.

10          JUDGE EZRA:  Thank you very much.  Have a good rest of        09:56:15

11   the week.

12          To those of you, like me, who are veterans, happy

13   Veteran's Day.  I'm actually going to get Veteran's Day off

14   this year.  I'm usually traveling somewhere.

15          And we will get this done one way or the other.  Thank        09:56:29

16   you so much.

17          THE CLERK:  All rise.

18          (Proceedings adjourned, 9:56 a.m.)

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3          I, ROBIN G. BOBBIE, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6          I FURTHER CERTIFY that the foregoing pages constitute

7    a full, true, and accurate transcript of all of that portion of

8    the proceedings contained herein, had in the above-entitled

9    cause on the date specified therein, and that said transcript

10   was prepared under my direction and control.

11         DATED at Phoenix, Arizona, this 7th day of November,

12   2017.

13

14

15                        s/Robin G. Bobbie
16                        Robin G. Bobbie, RMR, CRR

17

18

19

20

21

22

23

24

25